BEN LOMOND, INC. and Jomax, Inc., Appellants,

v.

Judith ALLEN, Appellee.

No. S–1981.

Supreme Court of Alaska.

June 24, 1988.

---

Brent M. Wadsworth, Law Offices of Brent M. Wadsworth, Anchorage, for appellants.

Tim MacMillan, Kalamarides & MacMillan, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Judith Allen entered into a contract with the defendant builders to purchase a home. As a down payment on the home, Allen conveyed to the builders a lot which she owned in Kotzebue. After Allen breached the contract, she sued Jomax, Inc. and Ben Lomond, Inc. for restitution. The jury returned a special verdict making the following findings of fact: (A) the fair market

value of the lot conveyed to the builders was $12,000. and (B) the total amount of consequential damages sustained by the builders was $458.40. This ultimately resulted in an award for Allen of $26,206.21. Ben Lomond, Inc. and Jomax, Inc. appeal. We reverse in part on the ground that the evidence does not support the portion of the jury verdict concerning the builders' consequential damages.

## I.

On June 23, 1980, Judith Allen entered into a contract with Arctic Jomax Construction, Inc.[1] to purchase a home then under construction in Kotzebue. The contract, entitled Earnest Money Agreement, was signed by the parties and set the purchase price of the home at $89,500. Allen held title to a 12,101 square foot lot in Kotzebue which she received from the city in a land give-away program. To satisfy a $10,212.70 down payment, Allen conveyed title of her Kotzebue lot to Ben Lomond, Inc. The parties' contract stated that the builder was "taking [a] $12,000 lot" and would issue a credit at closing for the difference between $12,000 and the $10,212.70 needed to satisfy the down payment. Upon receiving title to the lot, the builders subdivided it into two lots, built a house on each, and sold them.

Judith and her husband, Clarence Allen, were approved for a home loan by Alaska Bank of the North in Kotzebue. As promised, the builders completed construction of the home by August 4, 1980, the date set for the loan closing. During closing, Allen refused to sign the final documents. The parties in this case do not dispute the fact that Allen breached the contract on August 4, 1980. The builders resold the home on April 20, 1981, evidently for the same amount for which Allen had agreed to buy it.

As the defaulting buyer, Allen sued the builders for restitution of either the lot she conveyed to them as down payment or, in the alternative, for the monetary value of the lot. In July, 1983, the case was brought to trial before a jury, which was instructed to decide two issues: First, the jury was to determine the fair market value of the lot as of the date conveyed by Allen as down payment. Second, the jury was to determine the consequential damages incurred by the builders as a result of Allen's breach of contract. The jury found that the fair market value of the lot was $15,000 and the consequential damages incurred by the builders were $602. The builders, dissatisfied with the verdict, then moved the court to enter judgment notwithstanding the verdict and/or to grant a new trial. The court denied the motion for judgment notwithstanding the verdict but granted the motion for a new trial.

Prior to the second trial, the court denied the builders' motion for a change of venue. At the second trial in September, 1986, the jury addressed the same two issues and found that the fair market value of the lot conveyed to the builders was $12,000 and the builders' consequential damages were $458.40. The trial court entered judgment in favor of Allen for $26,206.21 which included the value of the lot less the builders' damages, plus interest, costs and partial attorney's fees. Again, the builders moved for judgment notwithstanding the verdict and/or a new trial. The trial court denied both motions. The builders appeal, alleging that the trial court made numerous errors.

## II.

■ Restitution is available to a defaulting party to a contract to the extent that

---

1. The parties are confused about the separate identities of Arctic Jomax Construction, Inc.; Jomax, Inc.; and Ben Lomond, Inc., the shares of which have overlapping ownership. For example, in Allen's complaint, she alleges her contract was with Jomax, Inc. The defendants admitted this allegation, and affirmatively pleaded it in their answer. However, the written contract plainly shows that it was entered into by Arctic Jomax Construction, Inc. Similarly, in

their answer, defendants called Arctic Jomax Construction, Inc. "the defendant," when a glance at the caption of this case shows that it is not. Defendants also alleged that Allen transferred her Kotzebue lot to Arctic Jomax Construction, Inc., when the deed is made out to Ben Lomond, Inc. Since the parties do not find it necessary to distinguish between the three corporations, neither do we. Instead, we will refer to them as "the builders" when possible.

the benefit retained by the non-breaching party exceeds the amount of damages incurred by that same party as a consequence of the breach. *See Freedman v. Rector*, 37 Cal.2d 16, 230 P.2d 629 (1951); *see also* D. Dobbs, *Remedies* 863 (1973); Restatement (Second) of Contracts § 374 (1979).[2]

■ We adopt the majority rule which places the burden of proof on the defaulting buyer to prove the amount by which the benefits exceed the damages.[3] *See* 1 G. Palmer, *The Law of Restitution*, § 5.4, at 583–85 (1978). It is difficult to rationalize placing the burden of proof on the non-breaching party, who is the defendant in such restitution actions.[4]

■ Applying that rule, Allen is entitled to restitution damages measured by the value of the lot conveyed to the builders less the consequential damages incurred by the builders. Allen has the burden to prove the value of the lot and the amount of the builders' damages.

■ The builders argue that the trial court erred in failing to grant their motion for a new trial on the ground that the jury verdict was against the clear weight of the evidence. In reviewing the trial court's denial of a motion for new trial, "we must examine the record and determine whether 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.'" *Sloan v. At-*

*lantic Richfield Co.*, 541 P.2d 717, 724 (Alaska 1975) (quoting *Ahlstrom v. Cummings*, 388 P.2d 261, 262 (Alaska 1964)). If there is an "evidentiary basis for the jury's decision," we must affirm the denial of a new trial. *Olson v. McRae*, 389 P.2d 576, 577 (Alaska 1964). In this case, we find that the jury verdict with respect to the builders' damages is contrary to the clear weight of the evidence.

The jury concluded that the builders incurred consequential damages in the sum of $458.40. A review of the record provides no basis upon which this verdict can rest. The builders offered detailed evidence on several specific items of consequential damages incurred by them. John Ringstad, who handled the mortgage loan applications for Alaska Bank of the North in Kotzebue, testified at trial as to the losses incurred by the builders as a consequence of Allen's breach. Specifically, Ringstad testified as to the following expenses which were definitely paid by the builders: $53.38 for a credit report on Allen and a $402.50 commitment fee to Alaska Housing Finance Corp. for processing the loan. Mr. Ringstad also testified that a loan origination fee of $805 was probably paid to the bank by the builders. Additionally, the cost of heating the home between August and when the home was resold in April of the following year was between $750 and $1,000.

Finally and most significantly, the builders incurred $9,940.16 in finance charges

---

**2.** The Restatement states the rule as follows: (1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.
(2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.
Restatement (Second) of Contracts § 374 (1979).

**3.** A defaulting buyer does not meet this burden merely by proving that some benefit was transferred to the seller. To prevail, the defaulting buyer must prove the amount of damages suffered by the seller. 1 G. Palmer, *The Law of Restitution*, § 5.4, at 585 (1978). Failure to offer any proof by the defaulting buyer would result in a judgment for the non-breaching seller. *See Kitchin v. Mori*, 84 Nev. 181, 437 P.2d 865, 867 (1968).

**4.** The result of placing the burden of proof on the defaulting buyer is that the non-breaching seller will derive the benefit of doubt if the buyer fails in its burden of proof. *See* 1 G. Palmer, *The Law of Restitution*, § 5.4, at 587 (1978).

from August 4, 1980, the date the contract was breached, until April 20, 1981, the date the home was ultimately sold. Given the ordinary delays in reselling a home, including finding a buyer and allowing the buyer time to conduct a new title search, inspection, and acquire financing, we find that at least some portion of these finance charges was a foreseeable consequence of Allen's breach, and should have been included in the jury award.[5]

In sum, no matter how conservatively one arrives at the number representing the builders' consequential damages, that number would exceed the one arrived at by the jury.[6] Since the jury's verdict as to the amount of consequential damages incurred by the builders is contrary to the clear weight of the evidence, the trial court should have granted the builders' motion for a new trial on this issue. *See* Alaska R. Civ. P. 59(a).[7]

■ As for the jury's verdict of $12,000 for the value of the lot, we affirm. We believe that the evidence presented on this issue could have led to a lower verdict than that returned by the jury. However, we are not convinced that the jury's verdict was against the *clear* weight of the evidence.[8] Thus, the superior court did not err in denying the builders' motion for new trial on this issue.

### III.

■ Prior to the second jury trial in this case, the builders moved for a change of venue based on their argument that they could not get an unbiased jury in the "largely native community" of Kotzebue, where Allen had strong family and cultural ties.

In reviewing the trial court's denial of a motion for a change of venue, we reverse the trial court only if the trial judge abused his or her discretion in denying the motion. *See Maier v. City of Ketchikan*, 403 P.2d 34, 39 (Alaska 1965); AS 22.10.040. The builders offer no evidence which shows that a Kotzebue jury would be biased

5. The builders argue that the damage defenses of mitigation and foreseeability do not apply in restitution actions brought by a defaulting buyer. We disagree. Corbin, discussing the measurement of recovery by a defaulting plaintiff in a restitution action, states that "[t]he amount of the defendant's injury will be measured in accordance with the usual rules for determining damages for a breach." 5A A. Corbin, *Corbin on Contracts*, § 1124 at 13 (1964). Accordingly, the damage defenses of foreseeability and mitigation are available in restitution actions brought by a defaulting buyer.

6. After reviewing the record, we believe that the lowest award for consequential damages that a jury could reasonably return would include the following:
   1) costs of $455.88, including $402.50 for a loan commitment fee to Alaska Housing Finance Corp. and $53.35 for a credit check;
   2) interest of at least $1,600, which would be two months' interest at the lowest rate then prevailing, since the evidence suggests that it would take the builders at least two weeks to find a buyer and six more weeks to get a loan approved;
   3) offset by one month's rent of approximately $250, since Bill Lomax, one of the builders, used the house at the earliest in September of 1980 and since the only evidence on rental values was $250 per month.
   Thus, the least amount of damages a jury could reasonably award would be $1,805.88.

7. Alaska R.Civ.P. 59(a) provides:
   Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice. On a motion for a new trial in an action tried without a jury, the court may take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

8. The evidence did support the jury verdict of $12,000 for the value of the lot. For example, the contract itself referred to the "$12,000 lot" which satisfied the $10,212.70 down payment. We recognize that the stated contract amount is not determinative of the value of the lot, but it is at least evidence of the value. *See* Restatement (Second) of Contracts § 374 comment b (1979). Furthermore, Allen testified that the lot was worth $20,000 when she conveyed it to the builders. Finally, the builders submitted evidence that other lots in the area during the same time period sold at prices ranging from $5,000 to $10,500. However, on cross-examination, Allen elicited evidence that the lot which previously sold for $10,500 was a 10,500 square foot lot. In other words, it sold for $1.00 per square foot. At this $1.00 per square foot price, Allen's 12,101 square foot lot would sell for approximately $12,000.

against them. Furthermore, this court has previously held that no pattern has been found that "where Eskimos are the predominant ethnic group ... [the] jurors [are] unwilling to follow the court's instructions." *Wilson v. City of Kotzebue*, 627 P.2d 623, 635 (Alaska 1981). The trial court did not abuse its discretion in denying the builders' motion for change of venue.

The judgment of the superior court is AFFIRMED in part, REVERSED in part and the case is REMANDED to the superior court for further proceedings consistent with this opinion.[9]

---

**9.** The trial court's previous award of interest, costs and attorney's fees based on the special verdict is also vacated, as these matters must of necessity be determined after a new trial is completed on the claim of the builders' consequential damages.