Mary IVERSON, Appellant,

v.

Jeff GRIFFITH, Appellee.

No. S–12567.

Supreme Court of Alaska.

April 11, 2008.

Mary Iverson, pro se, Langley, Washington.

Charles Winegarden, Kenai, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

In this ongoing custody dispute, a mother sought custody of her daughter after the father began a new job on the North Slope that required him to be away from the daughter for two weeks each month. The mother sought a hearing to address the father's new employment and its effect on his ability to care for the child. The superior court denied the mother's request for a hearing and various other motions. Because the mother alleged a sufficient case of a change in circumstances to warrant a hearing and because the superior court failed to make findings explaining its denial of the mother's motion for appointment of a guardian ad litem, we remand to the superior court to (1) hold a hearing and (2) either appoint a guardian ad litem or make findings explaining why such appointment is not necessary.

## II. FACTS AND PROCEEDINGS

### A. Facts

Mary Iverson and Jeff Griffith married in 1995.[1] On December 15, 1995, Iverson gave birth to the couple's child, Cassidy. The couple divorced in 1996. The original custody arrangements were determined through the dissolution proceeding, but within two years those arrangements required modification, and extensive litigation followed. In June 1998 the superior court in Anchorage entered a custodial and visitation order, modifying the original custody agreement and granting Mary sole legal custody of Cassidy with reasonable visitation rights for Jeff.

Before the superior court's denial of the motion for custody modification that gave rise to the present appeal, the court had modified custody three times: once in 1998 (as discussed above), once in 2003, and once in 2005. Jeff's motions for modification that resulted in the 2003 and 2005 modifications addressed the risk of Cassidy being exposed to domestic violence directed toward Mary. The 2003 modification stemmed from an agreement reached by Mary and Jeff after Jeff had filed a motion to modify that alleged that Cassidy was at risk of witnessing or being a victim of the domestic violence that Mary's boyfriends perpetrated against Mary. The agreement granted Mary physical custody of Cassidy every other week. In 2004 Jeff filed his second motion to modify custody, based on the continued dangers presented by Mary's relationships with abusive men. In January 2005 the superior court granted Jeff's 2004 motion to modify custody and awarded him legal and primary physical custody of Cassidy, subject to Mary's right of visitation, because it found a substantial change of circumstances and determined that the modification was in Cassidy's best interests. On appeal, we affirmed the superior court's modification of custody.

Thus, Jeff had custody of Cassidy at the time Mary filed the motion for modification at issue in this case, and he continues to have custody. Currently, Jeff lives in North Pole, but he works on the North Slope and is away from Cassidy approximately two weeks of each month. When Jeff is away at work, Cassidy stays with Shannon and Gary Scheff in North Pole. Shannon, Cassidy's primary caregiver when her father is away, has known Cassidy since 2001. Shannon and Gary's daughter, Emily, and Cassidy are

---

1. This case was previously before us in 2006. The facts in this section are drawn from our earlier opinion in the case: *Iverson v. Griffith,* No. S–11843, 2006 WL 2578692 (Alaska Sept. 6, 2006).

close friends, and Shannon's mother, Kathy, is the principal at the school Cassidy attends. After the superior court awarded custody of Cassidy to Jeff in January 2005, Mary returned to Washington state, where she lived with her parents on Whidbey Island.[2] Mary has worked in hospitals in the past. As of July 2006 she worked part time as a deputy clerk for the court system on Whidbey Island.

### B. Proceedings

On April 12, 2006, Mary filed a "motion to modify custody, or in the alternative visitation, and for other relief." Although the motion primarily sought a modification of primary physical and legal custody of Cassidy, Mary alternatively requested (1) six weeks of summer visitation, (2) permission to exercise holiday visitations "wherever she wants, including Washington state," (3) an order directing Jeff to allow her to speak to Cassidy daily, and (4) an order directing him to cease and desist from recording or eavesdropping on Mary's conversations with Cassidy. Mary alleged that circumstances changed because Jeff had interfered with her visitation, and it had been more than two years since she was last involved in an abusive relationship.

After she had filed the motion but before the July 24, 2006 hearing on the motion, Mary learned that Jeff had changed jobs and was now working on the North Slope, causing him to be away from Cassidy for extended periods. Mary notified the court of this change at the hearing, but because of time constraints and the limited time the parties' lawyers had to prepare to address the issue, the court requested supplemental briefing to address whether Jeff's change in employment constituted a change in circumstances. The parties filed briefs in response.

In October 2006 Mary filed various other motions: (1) a "supplemental motion to modify custody, or in the alternative visitation, and for other relief"; (2) a request for a hearing; (3) a motion for appointment of a child custody investigator, or in the alternative, appointment of a guardian ad litem; (4) a motion for an order directing Jeff to provide her with information regarding Cassidy's whereabouts; (5) a motion for a change of venue; and (6) a motion for out-of-state Christmas visitation in 2006. The superior court denied all of Mary's motions on December 2, 2006. Mary appeals.

## III. STANDARD OF REVIEW

▇▇▇ The superior court has broad discretion in deciding child custody issues.[3] We will not reverse a superior court's custody decision unless the court has abused its discretion or the controlling factual findings are clearly erroneous.[4] We also apply the abuse of discretion standard to review decisions concerning the appointment of a child custody investigator[5] and change of venue.[6] The superior court abuses its discretion if it considers improper factors in determining custody, fails to consider statutorily mandated factors, or assigns disproportionate weight to certain factors while ignoring others.[7]

▇▇▇ We "review de novo a court's decision to deny a hearing on a motion to modify custody."[8]

2. After the superior court's modification of custody in favor of Jeff, Mary filed a new motion for modification, arguing that her recent move to Washington state created a change in circumstances. On October 21, 2005, the superior court denied Mary's motion to modify, concluding that her "voluntary move to Washington is not a basis for a change in visitation [or custody]." Mary did not appeal the October 21, 2005 order.

3. *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000) (stating that "[t]he trial court has broad discretion in the determination of child custody issues" and that "[w]e will reverse a trial court's resolution of custody issues only if ... we are

convinced that the trial court abused its discretion ...").

4. *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002).

5. *Ogden v. Ogden*, 39 P.3d 513, 516 n. 2 (Alaska 2001).

6. *Sever v. Alaska Pulp Corp.*, 931 P.2d 354, 360 n. 7 (Alaska 1996).

7. *Fardig*, 56 P.3d at 11.

8. *Maxwell v. Maxwell*, 37 P.3d 424, 425 (Alaska 2001) (quoting *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000)).

## IV. DISCUSSION

### A. It Was Error To Deny Mary's Request for a Hearing.

The superior court denied Mary's request for a hearing to address Jeff's employment and its effect on his ability to care for Cassidy. The court stated that Mary was "not entitled to an evidentiary hearing in light of the court's most recent hearing and because she has failed to allege circumstances which, if true, would entitle her to such a hearing." On appeal, Mary argues that she "should receive a full and fair opportunity to present evidence at an unbiased fair hearing, where all circumstances are carefully reviewed." She also states that she was not given a "Due process Fair Hearing" on July 24, 2006. Jeff responds by arguing that the request was deficient as a matter of law under AS 25.20.110 because Mary failed to meet her threshold burden of showing changed circumstances.

In *Maxwell v. Maxwell,* we held that the superior court may deny a hearing on a motion to modify custody only if the facts alleged in the motion would not warrant a change in custody.[9] Once the movant meets the threshold burden of showing a substantial change of circumstance, her or she is entitled to a hearing to consider whether "it is in the child's best interest to alter the existing custodial arrangement."[10] However, "a trial court is not required to grant a hearing in order to perform a best interests analysis if the allegations of changed circumstances are convincingly refuted by competent evidence."[11]

In Mary's supplemental motion to modify custody, she alleged that Jeff was working "two weeks on/two weeks off" on the North Slope and that while he was on the Slope, Cassidy was in the custody of Shannon and Gary Scheff. Jeff did not refute these facts. Rather, in his opposition to the supplemental motion, he admitted the employment change and the resulting change in Cassidy's care. Because Jeff's new employment situation prevented him from caring for Cassidy on a regular basis and because Cassidy was often in the custody of a family not approved by the court, Mary alleged a sufficient prima facie case of a change in circumstances. Thus, she was entitled to a hearing at which the superior court must determine whether it was in Cassidy's best interest to alter the existing custody arrangement. For this reason, we must remand this case to the superior court for an evidentiary hearing.[12]

### B. The Superior Court Did Not Abuse Its Discretion by Denying Mary's Motion for a Change of Venue, but on Remand the Superior Court May Consider a Venue Change.

The superior court denied Mary's motion for a change of venue without explaining its decision. Mary argues that venue should have been changed because "[t]he witnesses live in North Pole" and because the superior court judge with responsibility for Homer was biased. Jeff responds that "[t]he ends of justice certainly would not have been served by moving the matter" because "[t]he proceedings were concluded except for the

9. *Id.* at 425–26 (quoting *C.R.B. v. C.C.,* 959 P.2d 375, 378 (Alaska 1998)).

10. *Id.* at 426 (quoting *Lee v. Cox,* 790 P.2d 1359, 1361 (Alaska 1990)).

11. *Id.* (citing *Harrington v. Jordan,* 984 P.2d 1, 3 (Alaska 1999)).

12. Mary also appears to argue that the absence of a full hearing violated her due process rights, but she only mentions due process in passing in her opening brief and attempts to more fully develop the argument in her reply brief. As we have repeatedly explained, "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991). The rule in *Adamson* has been extended to cases involving pro se litigants. *See, e.g., A.H. v. W.P.,* 896 P.2d 240, 243 (Alaska 1995). Here, like in *Adamson,* Mary "mentions due process only in passing in her opening brief, although it is given more attention in the reply brief." 819 P.2d at 889 n. 3. Because Mary fails to sufficiently address her due process claim in her opening brief, we do not consider the argument. Her pro se status does not preclude the conclusion that she waived the due process claim. *See A.H.,* 896 P.2d at 243. Further, because a hearing appears to be required in these circumstances by the modification statute itself, we do not need to reach the constitutional question in order to find that Mary is entitled to a hearing.

court's final decision." Jeff also alleges that Mary's motion was made in bad faith to "plague" him "with endless litigation."

Under AS 22.10.040, the superior court has the power to "change the place of trial in an action ... to a designated place in another judicial district ... (1) when there is reason to believe that an impartial trial cannot be had; [or] (2) when the convenience of witnesses and the ends of justice would be promoted by the change." In *Ben Lomond, Inc. v. Allen,*[13] we affirmed the superior court's denial of a motion for a change of venue based on the first statutory ground, reasoning that the movant failed to come forward with any evidence that a local jury would be biased against her.[14] Regarding the second statutory ground, we explained in *Coughlan v. Coughlan:*[15]

> Where statutory ground (2) which states that 'when the convenience of witnesses and the ends of justice would be promoted by the change' is urged, the affidavit must state the names of the witnesses and the nature of the testimony expected from each, show that their proposed testimony is admissible, relevant and material to an issue in the case as shown by the record and state the reasons why the attendance of each would be inconvenient. In urging this statutory ground, the moving party bears the burden of proving not only that the convenience of the witnesses will be promoted but also that the ends of justice will be promoted by the change since the two conditions are stated conjunctively.[16]

Mary failed to meet her burden of showing that the superior court judge was biased or that the convenience of witnesses and the ends of justice would have been promoted by a change in venue. Under the first ground of AS 22.10.040, Mary's conclusory remarks about the bias of the superior court judge assigned to the case were insufficient for a change in venue on the ground that an impartial trial cannot be had because she provided no specific evidence of the judge's bias. Under the second ground of AS 22.10.040,

Mary failed to specifically describe the nature of potential witnesses' testimony and why the attendance of each potential witness would be inconvenient. Further, she failed to explain how the ends of justice would be promoted by changing venue after the Homer court had presided over years of hearings and motion practice in this case. These failures indicate that Mary had not met her burden of proving that a change in venue was appropriate. In addition, there is evidence that Mary filed the motion in bad faith. In an email to Jeff, she wrote, "Judge Brown will retire or we will get venue changed and this can go on forever.... My attorney will continue to ask for custody of Cassidy and this will eventually happen." The email indicates that at least part of Mary's intent in seeking a change in venue was to "threaten endless litigation" as alleged by Jeff. Thus, the superior court's denial of her motion was within its discretion.

Nevertheless, evidence in the record reveals that, as the result of the passage of time, no one connected to the case still lives in Homer. In addition, Judge Brown has retired. On remand, the superior court may consider any renewed motion to change venue.

### C. On Remand, the Superior Court Should Either Appoint a Guardian Ad Litem or Make Findings Explaining Its Decision Not To Do So.

■ The superior court denied Mary's motion for appointment of a child custody investigator or guardian ad litem without explaining its decision. Mary argues that Cassidy should be able to speak with a child custody investigator or guardian ad litem "for her own well being." Jeff responds that Mary's motion is deficient because AS 25.24.310 applies only to motions filed and determinations made "before trial."

Alaska Rule of Civil Procedure 90.6 provides that "the court may appoint an expert under Evidence Rule 706 to investigate custody, access, and visitation issues and provide

---

**13.** 758 P.2d 92 (Alaska 1988).

**14.** *Id.* at 96–97.

**15.** 423 P.2d 1010 (Alaska 1967).

**16.** *Id. at* 1015.

an independent opinion concerning the child's best interests." Rule 90.7(a) provides that "the court may appoint a guardian ad litem for the child only when the court finds separate representation of the child's best interests is necessary." But Rule 90.7(c) states that "[i]f the court denies a motion for appointment of a guardian ad litem, the court must make findings to explain the denial." Alaska Statute 25.24.310(c) requires a guardian ad litem "when, in the opinion of the court, representation of the child's best interests, to be distinguished from preferences, would serve the welfare of the child." In *Faulkner v. Goldfuss*,[17] we held that the trial court erred in failing to make findings on the record explaining the court's decision not to appoint a guardian ad litem, as required by Rule 90.7(c).[18]

Here, the superior court denied Mary's motion for appointment of a guardian ad litem or child custody investigator without making findings to explain the denial. On remand, the superior court must make findings explaining whether appointment of a guardian ad litem is necessary.[19]

## V.  CONCLUSION

Because Mary alleged sufficient facts to show a substantial change of circumstances, she was entitled to a hearing on her motion for change of custody. We therefore REMAND to the superior court to (1) hold a hearing regarding the effect of Jeff's move, job change, and the changes in Cassidy's daily care on the current custody arrangement, (2) either appoint a guardian ad litem (or child custody investigator) or make findings explaining why appointment of a guardian ad litem is not necessary, and (3) consider

17.  46 P.3d 993 (Alaska 2002).

18.  *Id.* at 1002.

19.  Mary raises miscellaneous other issues in her brief. None has merit: (1) The issue of 2006 out-of-state Christmas holiday visitation is moot because the 2006 Christmas holiday has already occurred. (2) Mary's argument regarding the superior court's denial of her motion for an order directing Jeff to provide information about Cassidy's whereabouts is without merit because Mary failed to demonstrate that she does not know Cassidy's whereabouts. (3) Mary's argument challenging the superior court's striking of

the AS 25.20.110 factors to determine whether modification of custody or visitation is appropriate. We AFFIRM the superior court's decision to deny the motion for change of venue although this motion may be renewed on remand.

her notice of filing letters of support is also without merit because the letters contain inadmissible hearsay. *See* Alaska R. Evid. 801–802. Even if Mary's argument for admission of the letters had merit, she cites no authority for the letters' admission and offers no argument other than the conclusory statement that the court erred, so we do not consider the point on appeal. *See Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991). (4) Finally, we have not considered Mary's photo collage and evidence of her new marriage because they were not part of the record below.