Kathleen SMITH, Appellant,

v.

Joseph GROLESKE, Appellee.

No. S–12628.

Supreme Court of Alaska.

Dec. 5, 2008.

Carol A. Brenckle, Law Offices of Carol A. Brenckle, Kenai, for Appellant.

Phil N. Nash, Law Offices of Phil N. Nash, Kenai, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Following a post-divorce visitation dispute, the superior court entered judgment awarding statutory visitation damages and attorney's fees and costs without a requested evidentiary hearing. A subsequent request for reconsideration was denied. Because it was error to enter sanctions without a requested evidentiary hearing and because the court used the wrong statute as the basis for its judgment, it was an abuse of discretion to deny reconsideration. We therefore vacate the judgment and remand for an appropriate evidentiary hearing.

## II. FACTS AND PROCEEDINGS

Joseph Groleske and Kathleen Smith dissolved their marriage in November 2000 while both lived in Kenai; they entered into a court-approved custody and visitation agreement for their two children. Following disagreement about the details of child transfers, in June 2001 the court entered an order establishing when and where the children would be exchanged.

Two months later Joseph requested sanctions under AS 25.20.140 [1] and AS 25.20.115 [2]

---

1. AS 25.20.140 provides, in relevant part, as follows:

 Action for failure to permit visitation with minor child.

 (a) When a court order is specific as to when a custodian of a minor child must permit another person to have visitation with that child, and the custodian fails, wilfully and without just excuse, to permit visitation with the child in substantial conformance with the court order, the person entitled to visitation has a separate cause of action against the custodian for damages.

 (b) The amount of damages recoverable under this section is $200 for each failure of the custodian, wilfully and without just excuse, to permit visitation with the child for substantially the length of time and substantially in the same manner as specified in the court order.

 This amount may not be increased or decreased once liability has been established. The custodian is not liable for more than one failure in respect to what is, under the court order, a single continuous period of visitation. The prevailing party in an action commenced under this section is entitled to recover a reasonable attorney fee.

 (c) As used in this section,

 (1) "court order" means a decree, judgment, or order issued by a court of competent jurisdiction[.]

2. AS 25.20.115 provides as follows:

 Attorney fee awards in custody and visitation matters.

 In an action to modify, vacate, or enforce that part of an order providing for custody of a

after Kathleen caused him to miss a two-and-one-half-hour visitation with the children. At an October 2001 hearing a master concluded that there had been a visitation violation but not a fundamental visitation breakdown. The master found Kathleen's conduct was not egregious and that she did not act "willfully" as the term is used in AS 25.20.140(b). The master recommended that the parties amend their dissolution agreement to include flexibility for make-up visitation and warned that the court would consider the missed visit if an on-going pattern developed.

That same day Kathleen moved to modify custody, visitation, and child support, giving notice that she intended to retire from her job at the end of the school year and move with the children to Michigan. Before a scheduled modification hearing in July 2002, the parties agreed to an outline for a settlement. The parties orally notified the court of the settlement and the hearing was cancelled. The parties then filed written notice of the settlement, providing an "outline form" of the agreement and indicating that "the finished agreement shall be prepared following the 4th of July Holiday and finalized pursuant to court procedure." The agreement outline gave Kathleen sole custody of the children, with Joseph having seven weeks of summer visitation.[3] The settlement was never finalized, and neither party applied for an order approving or effectuating it, but both parties honored the outlined terms in 2003, 2004, and 2005.

In 2006 the children, then eleven and fifteen years old, were scheduled to fly to Alaska for Joseph's seven weeks of summer visitation. Joseph bought airline tickets and sent Kathleen the travel itinerary. At some point before the scheduled trip, Kathleen became aware that Joseph had a new job working on the North Slope for two-week shifts and therefore would be absent for part of the children's visit, and she raised concerns. A few days before the scheduled trip, Kathleen advised Joseph that the children would not be traveling to Alaska.

Joseph filed a "Motion For Enforcement Of Visitation," asking the court to: (1) direct Kathleen to immediately place the children on an airline with tickets to Kenai, at her expense; (2) grant a full seven-week visitation; and (3) enter a judgment for visitation sanctions and attorney's fees. In his supporting memorandum, Joseph referred to the July 3, 2002, settlement outline as an "order" for visitation, but in his supporting affidavit he acknowledged that there actually was no final settlement agreement or court order approving it.

Kathleen opposed the enforcement motion and filed a cross-motion to modify visitation, submitting a contesting affidavit and requesting an evidentiary hearing for both motions. Kathleen affirmatively acknowledged that the 2002 settlement outline for visitation was in effect, but argued that Joseph's new work schedule excused her decision not to allow the visitation and provided the basis for a change in the visitation agreement. Kathleen stated in her affidavit that: (1) Joseph refused to communicate with her about where and with whom the children would be staying while he was on the North Slope or how, if at all, he had arranged his work schedule to be with the children during the visitation period; (2) she believed it was not in the best interests of the children to go to Alaska for seven weeks if their father would be gone half of the time; and (3) it would be negligent for her to send the children without additional information.

Joseph submitted an additional affidavit on reply and opposed the motion to modify visitation. In his affidavit, Joseph referenced and attached a copy of a letter said to have

child or visitation with a child, the court may, upon request of a party, award attorney fees and costs of the action. In awarding attorney fees and costs under this section, the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith.

**3.** The Notice of Settlement outline provided that for summers:

Dad to have 7 weeks plus the weekend, defined generally as: children to fly to Alaska to arrive in Kenai in the afternoon at approximately the time dad is off work on the third Friday of June of each year. The kids will have seven weeks plus the weekend with dad, such that they return to mom the afternoon or early evening of the Monday after the 7th Friday with dad.

been mailed and delivered to Kathleen, in which he had advised Kathleen that the children would be staying "in my home and cared for by my family and myself the same as they have every summer since you moved them to Michigan."

Without a hearing of any kind, the superior court granted Joseph's motion to enforce visitation. The court signed the order Joseph lodged, which noted that the motion was based on "the Settlement filed with the court in July of 2002" and also referred to the master's comments during the 2001 visitation dispute indicating that the missed visitation would be considered if it turned out to be an on-going pattern. The order allowed Joseph to file a separate motion for sanctions and fees.

Joseph then moved for visitation damages and attorney's fees and costs under AS 25.20.140(b), seeking the statutory $200 damages sanction, slightly over $3,000 in attorney's fees, and $347 for reimbursement of an airplane ticket purchased for an adult to travel with the children. Kathleen opposed the motion. She again submitted a contesting affidavit and again requested a hearing.

Without a hearing, a master recommended that the superior court grant Joseph's motion for the $200 visitation damages sanction, $5,274 in attorney's fees and costs, and $347 in travel costs. The master used the order lodged by Joseph, which noted the October 2001 visitation incident and included conclusory language stating that Kathleen's refusal to allow the children to travel to Alaska "was a willful failure without just excuse to prevent visitation." Kathleen objected to and moved for reconsideration of the master's recommendation, arguing: (1) she did not have an opportunity to be heard; (2) the attorney's fees were increased without explanation; (3) the amount awarded represented one-third of her annual income; (4) Joseph had his full summer 2006 visitation; (5) Jo-

seph did not include a statement of the parties' earning capacities; and (6) her actions were in good faith, reasonable, and justified. She submitted an additional contesting affidavit with her objection.

The master later heard evidence and arguments regarding the reasonableness of Joseph's attorney's fees and reduced the original recommendation for a fee award by $320. The master did not hear evidence about the basis for Kathleen's decision to cancel the children's scheduled visitation or her financial capacity. The master recommended an order and judgment against Kathleen for $200 in sanctions, just under $5,000 in attorney's fees, and $347 in travel expenses. The trial court accepted the master's recommendation, ordering Kathleen to pay Joseph a total of $5,502.

Kathleen moved for reconsideration, arguing that the court: (1) did not conduct an evidentiary hearing on the issues of "willfulness" and "financial capacity"; (2) accepted Joseph's representations regarding billing charges without proof; (3) ignored her claim that the decision not to send the children was in the children's best interests; (4) failed to consider that Joseph actually was not denied visitation; and (5) relied on Joseph's intentional misrepresentations regarding past court proceedings. The court denied reconsideration without comment.

Kathleen appeals the superior court's denial of her motion to reconsider the entry of judgment, asking this court to vacate the judgment and remand for an evidentiary hearing.[4]

## III. STANDARD OF REVIEW

We review the denial of a motion for reconsideration for abuse of discretion.[5] We will find abuse of discretion only when, after reviewing the entire record, we are left with a definite and firm conviction that the

---

4. The record does not reflect that the superior court ever ruled on Kathleen's motion to modify visitation. The record does reflect that the State of Alaska, Child Support Services Division, appeared in the case at Kathleen's request to seek an increase in Joseph's child support payments. The superior court later entered an order increasing Joseph's child support obligation, incorporating the basic custody and summer visitation

terms of the parties' 2002 settlement outline. Kathleen's appeal does not concern any of these issues.

5. *Manelick v. Manelick,* 59 P.3d 259, 262 (Alaska 2002) (citing *Harrelson v. Harrelson,* 932 P.2d 247, 250 (Alaska 1997)).

lower court erred.[6] The appeal of a motion for reconsideration does not focus on the merits of the underlying decision, but only on the propriety of the denial of reconsideration.[7]

## IV. DISCUSSION

■ The fundamental thrust of Kathleen's reconsideration motion was that she had been denied a requested evidentiary hearing on the factual issues necessary for the entry of sanctions after Joseph's successful motion to enforce visitation. Although she did not explicitly compare the two statutory provisions, Kathleen also argued, as she had previously argued in her opposition to the motion for sanctions, that the standards for the imposition of sanctions should be those of AS 25.20.115 (for enforcement of visitation) and not of AS 25.20.140 (for wrongful denial of specific court-ordered visitation). She makes the same arguments on appeal and casts the failure to hold an evidentiary hearing as a violation of her due process rights.

■ Due process requires that a party be given an opportunity for a hearing on issues of consequence.[8] We hold that sanctions awarded under either AS 25.20.140[9] or AS 25.20.115[10] are issues of consequence requiring an evidentiary hearing if a hearing is requested and if there are genuine factual disputes to be resolved.[11]

■ To determine what procedures due process requires:

Alaska courts balance: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.[12]

Kathleen has an important private interest at stake: not being assessed unwarranted and chilling monetary sanctions. There is a high risk this interest will be erroneously deprived if a court may sanction out-of-court conduct solely on the basis of conflicting affidavits, rather than on the basis of an evidentiary hearing that allows the court to resolve disputed factual issues, see and hear witness testimony under both direct and cross-examination, make reasonable credibility determinations, and make necessary findings of fact for appellate review. The added fiscal and administrative burden of an evidentiary hearing, while not negligible, is not so significant that it outweighs the benefits.

The balance weighs in Kathleen's favor. And because due process required an evidentiary hearing on contested issues before the entry of statutory sanctions against Kathleen, it was an abuse of discretion for the superior court to deny Kathleen's reconsideration motion after she pointed out: (1) dis-

6. *Id.* (citing *Morgan v. State, Dep't of Revenue*, 813 P.2d 295, 297 n. 4 (Alaska 1991)).

7. *See Abraham v. State*, 585 P.2d 526, 530 (Alaska 1978).

8. *Heustess v. Kelley–Heustess*, 158 P.3d 827, 835 (Alaska 2007) (citing *Carvalho v. Carvalho*, 838 P.2d 259, 262–63 (Alaska 1992) (holding that rejecting parent's request to testify in child custody hearing violated due process)); *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998) (procedural due process requires evidentiary hearing for contested custody proceedings).

9. AS 25.20.140, which relates to sanctions and damages for wrongful failure to permit visitation specified in a court order, was originally enacted in 1977 as AS 09.55.238, ch. 126, § 2, SLA 1977, and later renumbered as AS 25.24.300, ch. 94, § 9, SLA 1980.

10. AS 25.20.115, which in relevant part relates to the enforcement of visitation rights, was enacted in 1990. Ch. 130, § 3, SLA 1990.

11. *Cf. Hermosillo v. Hermosillo*, 797 P.2d 1206, 1208 n. 1 (Alaska 1990) (visitation order entered without a hearing not a violation of due process if hearing not requested); *Douglas v. State, Dep't of Revenue*, 880 P.2d 113, 116–17 (Alaska 1994) (prisoner's due process rights were not violated by failure to hold evidentiary hearing on inability to pay child support where minimum support obligation was imposed regardless of inability to pay because there were no factual issues to resolve).

12. *Alyssa B. v. State, Dep't of Health & Soc. Servs.*, 123 P.3d 646, 649 (Alaska 2005) (holding that due process does not require jury trials in CINA proceedings) (internal quotation marks omitted).

puted issues of material fact raised by the parties' affidavits; (2) her earlier request for an evidentiary hearing; and (3) the court's failure to conduct a hearing. We must therefore vacate the judgment and remand for an evidentiary hearing.

Our conclusion is further supported by the superior court's erroneous reliance on AS 25.20.140 rather than AS 25.20.115 when entering judgment. A judgment of sanctions and attorney's fees may be entered under AS 25.20.140 only for a wilful and without-just-excuse denial of visitation specified in a "court order," which is defined in the statute as "a decree, judgment, or order issued by a court of competent jurisdiction." [13] Because the parties' custody settlement agreement was never submitted for court approval, it does not qualify as a "court order" under AS 25.20.140. Joseph could not obtain attorney's fees in an action under that provision even if his visitation had been denied rather than merely delayed.

By contrast AS 25.20.115 governs attorney's fees in a wider range of actions affecting custody and visitation, including Joseph's action to enforce visitation. Before 1990 awards of attorney's fees for both denial of visitation sanctions and actions to enforce visitation were governed by the same provision, AS 25.24.300.[14] The legislature then enacted AS 25.20.115 to specifically govern actions "to modify, vacate or enforce that part of an order providing for custody of a child or visitation of a child," providing different criteria for awarding attorney's fees in such actions.[15] We have construed AS 25.20.115 broadly, holding it applicable not only to actions to modify, vacate, or enforce custody and visitation orders, but also to actions seeking to alter the status quo of custody arrangements.

In *Rowland v. Monsen,*[16] an unmarried couple with two children entered into an agreement giving custody to the father and visitation to the mother; the mother later petitioned for a protective order against the father, claiming that the father sexually abused the children.[17] The court returned the children to the father after the mother was unable to prove any abuse.[18] We held that AS 25.20.115 allowed an award of attorney's fees against the mother even though the action did not involve an attempt to modify, vacate, or enforce a custody order, because "it is the substance of the proceeding that matters" and "she was, in effect, trying to alter the status quo." [19] In *Rowland,* we discussed and relied on our earlier decision in *B.J. v. J.D.:*[20]

> In that case, J.D. believed that he was the father of V.J., and brought an action to gain custody of V.J. When a paternity test showed that J.D. was not the father, the court dismissed his complaint and awarded custody to B.J. Several years later, J.D. filed a new complaint seeking custody of V.J. B.J. ultimately moved for an award of attorney's fees in the new action and a dispute arose as to whether AS 25.20.115 or the so-called "divorce exception" to Civil Rule 82 set the standard for an award. J.D. never filed a motion to modify, vacate, or enforce custody. Nevertheless, AS 25.20.115 governed J.D.'s efforts because his new complaint 'attempted to modify' the substance of the court's earlier custody order and the status quo.' [21]

Here, Kathleen and Joseph dissolved their marriage and obtained court orders regarding custody and visitation in 2000 and 2001. They agreed to modify custody and visitation in 2002 and notified the court of the outline of their agreement. Although they never obtained a court order approving or effectuating their agreement, they lived by it for four years and it was the status quo. Kathleen's decision to cancel Joseph's 2006 summer visitation was an alteration of the status quo, and Joseph's motion to enforce

---

13. AS 25.20.140(c)(1).

14. *L.L.M. v. P.M.,* 754 P.2d 262, 265 (Alaska 1988). AS 25.24.300 now is AS 25.20.140. *See supra* n. 9.

15. AS 25.20.115.

16. 135 P.3d 1036 (Alaska 2006).

17. *Id.* at 1037.

18. *Id.*

19. *Id.* at 1039.

20. 950 P.2d 113 (Alaska 1997).

21. 135 P.3d at 1039 (internal citations omitted).

that visitation ultimately maintained the status quo. As in *Rowland* and *B.J. v. J.D.*, AS 25.20.115 governs the award of attorney's fees in this case.

 If sanctions are to be entered against Kathleen for her delay of Joseph's visitation, they must be entered within the framework of AS 25.20.115 and must be limited to an award of attorney's fees and costs after fully considering "the [parties'] relative financial resources" and "whether the parties have acted in good faith."[22] After the evidentiary hearing on remand, the superior court must make explicit findings to support its decision to award attorney's fees and costs under this statute.[23]

We find no merit in Joseph's argument that Kathleen laid out her case in her affidavits and therefore an evidentiary hearing was unnecessary. The affidavits and briefing in the superior court reflect that the crux of the dispute was Kathleen's discovery that Joseph was working a two-week-on, two-week-off schedule on the North Slope and her related concern about what the children would be doing while Joseph was on the North Slope.

Joseph argues that as a matter of law changing jobs to a North Slope schedule cannot "be considered a change of circumstances" giving rise to any legitimate concerns by Kathleen, but he did not have the benefit of our recent opinion in *Iverson v. Griffith*.[24] There we stated that a custodial parent's change of jobs to a North Slope schedule and the necessary change of child care to "a family not approved by the court" was "a sufficient prima facie case of a change of circumstances" warranting a hearing on a requested modification of the existing custody arrangement.[25] *Iverson* lends support to Kathleen's position that she had a legitimate right to raise concerns about where and with whom the children would be while Joseph was on the North Slope.

But we also note the record in this case reflects that during the 2000 dissolution, Kathleen recognized and agreed that Joseph's immediate family members had visitation rights with the children, and that when Kathleen and Joseph settled their 2001 visitation dispute, they each agreed the other had discretion:

> to delegate the physical care of the children to another person, providing it is in the best interests of the children, such as to provide that the children spend time in the home of other children or with friends of the parent, relatives, or otherwise as that parent deems appropriate.

 Kathleen stated in her affidavits that Joseph told her it was none of her business with whom the children would be staying, and that as the parent with legal and primary custody of the children, she did not believe it prudent or in the best interests of the children to send them from Michigan to Alaska without knowing where they would be. Joseph stated in his affidavit that he told Kathleen that he and his family would take care of the children. Whether Kathleen acted in good faith depends on what she actually knew or perhaps should have known when she withheld the children from their trip to Alaska, and her credibility appears to be a critical factor on this issue. Good faith, like state of mind and intent, generally is not susceptible to summary disposition where affidavits conflict.[26] This case is no exception.

## V. CONCLUSION

We VACATE the judgment entered against Kathleen and REMAND for further proceedings consistent with this opinion.

**22.** AS 25.20.115.

**23.** *S.L. v. J.H.*, 883 P.2d 984, 985 (Alaska 1994) (in making award of attorney's fees under AS 25.20.115, court must make explicit findings as to relative financial resources and good faith).

**24.** 180 P.3d 943 (Alaska 2008).

**25.** *Id.* at 946.

**26.** *See Wilcox Assocs. v. Fairbanks N. Star Borough*, 603 P.2d 903, 906 (Alaska 1979) ("Summary judgment is generally inappropriate where a party's state of mind is at issue. But it may be proper if the affidavits in regard to state of mind are substantially uncontested.") (citing *Poller v. CBS, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (regarding motive and intent); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir.1970) (regarding state of mind)).