Michael S. BERRY, Appellant,

v.

April L. BERRY, Appellee.

No. S–14008.

Supreme Court of Alaska.

June 1, 2012.

---

21. *Id.*

Michael S. Berry, pro se, North Pole, Appellant.

April L. Berry, pro se, Fairbanks, Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A father appeals various procedural actions taken by the superior court in his divorce and custody proceeding. Appearing pro se, the father alleges that the court's expedited procedures violated his due process rights and reflected judicial bias. The father also argues that the court abused its discretion in its award of attorney's fees. Because the court's procedures did not violate the father's due process rights and the father has not shown that the court was biased against him, we affirm the procedural decisions of the superior court. But because the superior court did not follow the established process for the award of attorney's fees, we reverse the superior court's attorney's fees order and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Michael and April Berry were married on November 20, 2004. They have two children, born in 2006 and 2008. The couple separated in June 2009.

On June 16, 2009, April filed a complaint for divorce. The first hearing took place on August 28, 2009. At that hearing, the superior court set September 25 as the date for a "scheduling conference and appearance with counsel." Throughout the proceedings before the superior court, April was represented by an attorney, while Michael represented himself.

In the four weeks between the first hearing, on August 28, and the next one, on September 25, the parties filed numerous motions. At the September hearing, the court reviewed the status of the parties' motions and noted that because another case had settled, the court would be able to hold a hearing to resolve all outstanding motions on the following Tuesday, September 29. The court made a number of factual findings and rulings at that hearing.

The trial itself began on June 28, 2010. It was originally intended to last two days, but extended over five.

Michael, pro se, appeals the court's procedural decisions on various grounds, as well as the court's award of attorney's fees.

## III. STANDARD OF REVIEW

■ Michael's "constitutional arguments present questions of law, which we review de novo; we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[1]

■ "We review procedural decisions of the superior court for abuse of discretion."[2] Under this standard, "[w]e will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[3]

■ "The award of attorney's fees in a divorce action ... rests within the broad discretion of the trial court and will not be disturbed on appeal unless it is 'arbitrary, capricious, or manifestly unreasonable.'"[4]

## IV. DISCUSSION

■ Michael raises ten issues on appeal. Several of Michael's claims allege violations of due process. His brief invokes due process under the Fourteenth Amendment of the U.S. Constitution and under article I, section 7 of the Alaska Constitution. We have stated in general that "[t]he crux of due process is opportunity to be heard and the right to adequately represent one's interests."[5] "Due process is satisfied if the statutory procedures provide an opportunity to be heard in court at a meaningful time and in a meaningful manner."[6]

■ Several of Michael's claims also allege judicial bias. "In order to prove a claim of judicial bias," a party must show that the judge "formed an opinion of him from extrajudicial sources."[7] Because Michael has provided no evidence that the superior court relied on extrajudicial sources in forming any of its opinions, and because nothing in the record suggests that the superior court did so, we conclude that all of Michael's allegations of judicial bias are without merit.

Michael argues that the only way to remedy the violation of his due process rights and the superior court's judicial bias "is for the Supreme Court to reverse all findings, vacate all orders issued by the Superior Court and remand the case for reassignment and retrial." In the sections that follow, we review each of Michael's arguments. For the reasons stated in each section, we instead affirm the superior court in all respects except its attorney's fees award.

### A. Michael Did Not Preserve The "Accelerated Motion Practice" Issue.

■ Michael argues that the superior court violated Rule 77 of the Alaska Rules of Civil Procedure by ordering an accelerated briefing schedule at a hearing on September 25, 2009, and in doing so violated his due process rights.

The September 25 hearing was scheduled on August 28 as a "scheduling conference and appearance with counsel," in order to "pick a time to resolve the differences if

1. *VinZant v. Elam*, 977 P.2d 84, 86 (Alaska 1999) (citing *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1241 (Alaska 1995)).

2. *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 592 (Alaska 2007) (citing *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000)).

3. *Id.* (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004)) (internal quotation marks omitted).

4. *Ferguson v. Ferguson*, 195 P.3d 127, 130 (Alaska 2008) (quoting *Hopper v. Hopper*, 171 P.3d 124, 129 (Alaska 2007)).

5. *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192–93 (Alaska 1980) (citing *Hansberry v. Lee*, 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940)).

6. *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

7. *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.")).

they're not resolved." In the period between August 28 and September 25, both parties filed numerous motions and supporting documents.

At the September 25 hearing, the superior court reviewed the state of the parties' briefing and asked whether any of the motions were not ready for decision because oppositions or replies had not yet been filed. After April's attorney noted a few oppositions and replies that she still intended to file, the superior court stated that "a case has folded," so that the court would be able to hold a hearing to address all the motions early the next week. The court proposed holding a hearing on Tuesday morning at which "we'll close out all the motions. Anybody [who] has any pleadings to file in that regard, they should file them and serve them on the other party with a chambers copy by the end of the business day on Monday."

Shortly thereafter, April's attorney stated: "The idea is just make them all ripe on Monday afternoon." The court replied:

> Yeah, well, ripe or not they're going. I think ... everybody's opposing positions are clear, so we don't have to exhaust the civil procedural rules. Everybody is pretty well doing a good job of making it clear what their position is on the different subjects, and so I'll take what everybody has up to the time of the hearing, and then you can supplement whatever you have at the hearing and we'll do the best we can Tuesday morning at 10 o'clock. Okay? Anything else Mr. Berry until then?

In the audio recording of the September 25 hearing Michael's reply is not clearly audible, but it appears from the superior court's response that he raised no objection. Nor does Michael's brief identify any subsequent objection by him to the superior court's accelerated briefing schedule.

Michael argues on appeal that the court's accelerated briefing schedule "grossly deviated" from Alaska Civil Rule 77 and in doing so violated his due process rights. Michael argues that the motion schedule announced by the superior court on September 25 was a violation of Civil Rule 77(d), which states that "[r]eply and supplemental materials and memoranda, if any, may be served and filed by the moving party within five days of the date of the service of the opposition to the motion." We interpret Michael's argument to be that the superior court abused its discretion and violated his due process rights by not allowing him a full five days to reply to two of April's oppositions which were filed on September 28,[8] giving Michael less than five days to file a reply prior to the September 29 hearing.[9]

We decline to rule on the merits of this claim because Michael failed to preserve it for appeal. Michael was given an opportunity to object to the superior court's proposed briefing schedule when the court asked him: "Anything else Mr. Berry until then?" Michael made no objection. We have held in other contexts that "failure to make the appropriate objection during the hearing waives the right to appeal procedural errors."[10] Michael's failure to object waives this issue on appeal.[11]

---

**8.** On September 28, April filed her Opposition to Motion To Establish Bank Account To Protect Minor Children's Permanent Fund Dividend, and her Opposition to Motion for Plaintiff To Only Have Supervised Visitation. Michael also suggests in his reply brief that he did not receive April's reply to his opposition to her motion for a restraining order until September 29, the day of the hearing, which "limited [his] ability to adequately prepare to address this motion." But April's reply was filed on September 25. Michael's reply brief identifies no requirement in the Civil Rules that replies must be filed more than four days before a hearing at which they will be considered.

**9.** Michael actually succeeded in filing replies to these two oppositions on September 28, but we

do not accord great weight to this fact. A litigant who filed an ill-considered reply under an improper deadline could be prejudiced no less than a litigant who filed no reply at all.

**10.** *Williams v. Abood*, 53 P.3d 134, 148 & n. 66 (Alaska 2002) (citing among others *Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867, 873 n. 8 (Alaska 1992) (concluding that "Far North's failure to object or raise the point before the Alaska Public Utilities Commission constitutes waiver, because any other result would inevitably create an incentive for dilatory failure to assert error")).

**11.** Although we uphold the superior court's action in accelerating the briefing schedule, we note that it would have been preferable for the

**B. The Superior Court Cured Any Error That Resulted From Signing Temporary Orders Before Considering Michael's Arguments.**

■ Michael next argues that the superior court violated Alaska Civil Rule 77 by signing temporary orders and a child support order drafted by April's attorney without first considering Michael's timely filed response, and in doing so violated Michael's due process rights.

At the conclusion of the September 29 hearing, the court made various factual findings and rulings. After discussing what evidence was available concerning the parties' incomes, the superior court stated: "I'll instruct that within days [April] submit a child support calculation and proposed order. Mr. Berry, you have ten days to object to the calculation and the proposed order." The court later invited April's attorney to "prepare the temporary orders as just described by the court."

On October 1, April's attorney filed proposed orders based on the court's oral orders at the September 29 hearing. On October 13, Michael filed a brief two-page opposition to the proposed orders. Also on October 13, the superior court signed the proposed orders. At a later hearing, the court conceded that it had not considered Michael's opposition before signing the orders.

If we assume out of deference to Michael's pro se status that the court's orally announced ten-day deadline applied to Michael's responses to April's draft temporary orders, and not only to her child support calculations and draft interim child support order,[12] Michael's responses to the proposed orders would by default have been due on October 12.[13] But April's attorney served Michael the proposed orders by mail. Under Alaska Civil Rule 6(c), "[w]henever a party has the right or is required to act within a prescribed period after the service or distribution of a document, . . . and the document is served or distributed by mail, three calendar days shall be added to the prescribed period." Thus, Michael would have had until October 14 to respond to April's proposed orders.

But even if we assume the applicable deadline to be October 14, the superior court cured any error by subsequently reconsidering its October 13 orders in light of Michael's arguments. Our cases have established that when a court overlooks a party's timely filings and issues a premature order, the resulting prejudice may generally be cured by the court subsequently reconsidering its decision in light of the party's arguments.[14] The

court to explain in greater detail to this pro se litigant the consequences of accelerating the schedule.

12. Otherwise, the deadline for Michael's response to the draft temporary orders would have been governed by Alaska Civil Rule 78(b), which states that a party may file objections to another party's proposed orders within five days after service of the proposed orders.

13. Alaska Civil Rule 6(a) states:

In computing any period of time prescribed or allowed by . . . order of court, . . . the day of the act . . . from which the designated period of time begins to run is not to be included. The last day of the period is to be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.

Day ten for Michael's objections would thus have arrived on Sunday, October 11. October 12, 2009, was Columbus Day, but this is not a legal holiday in Alaska. *See* AS 44.12.010 (legal holidays). (It is true that AS 44.12.010(a)(13) states

that "every day designated by public proclamation by the President of the United States . . . as a legal holiday" constitutes a legal holiday in Alaska, and that President Obama designated October 12, 2009, by public proclamation as Columbus Day. Proclamation No. 8437, 74 Fed.Reg. 53,147 (Oct. 9, 2009). But the President's proclamation did not define Columbus Day as a "legal holiday," or indeed a holiday of any kind. *Id.* Thus, October 12, 2009, was not a legal holiday under AS 44.12.010(a)(13).)

14. *See Mullins v. Local Boundary Comm'n*, 226 P.3d 1012, 1016 (Alaska 2010) (citing *Johnson v. Johnson*, 544 P.2d 65, 71 (Alaska 1975) (holding that no due process violation occurs where party who was denied opportunity to be heard on issue is later afforded opportunity to brief and argue merits through motion for reconsideration)); *Gallant v. Gallant*, 945 P.2d 795, 799–800 (Alaska 1997) ("[W]hile the superior court erred by ruling on [one party's] motion prematurely, that error was harmless," because the party's subsequent "motion for reconsideration apprised the court of the additional information and arguments he would have presented in his reply.").

superior court did this in the present case. After the superior court conceded at the November 13, 2009 hearing that it had signed April's proposed orders without first considering the opposition Michael had filed on October 13, Michael filed a motion to vacate the orders. In a handwritten note on the February 5, 2010 order denying Michael's motion to vacate, the court expressly noted that it had considered Michael's supplemental child support and income-related information yet still reaffirmed its prior child support order.[15] Though the superior court does not expressly state that it considered Michael's one-paragraph argument against the proposed temporary orders as well, such an express statement is not necessary for us to infer that the superior court read and considered Michael's two-page opposition in full.

Thus, Michael received an adequate opportunity to be heard and to represent his interests regarding the orders signed on October 13. His right to due process was not violated.[16]

## C. The Superior Court Did Not Violate Michael's Due Process Rights In Orally Issuing Temporary Child Custody Orders During A Scheduling Conference.

■ Michael argues that the superior court violated his due process rights by orally issuing temporary child custody orders at the August 28 scheduling conference. At the outset, we note that the oral delivery of orders is wholly ordinary and proper.[17]

The superior court stated at the conclusion of the August 28 hearing that Michael would have visitation with the children over weekends, as well as on Wednesday evenings, and could visit the children at daycare. This order largely continued the status quo. In addition, the order remained in effect only from August 28 to September 29, when the court orally delivered more comprehensive rulings regarding custody and other matters.

Michael accurately notes that he did not receive notice that the court might issue a temporary child custody order at the August 28 hearing. But Michael fails to identify any legal support for the claim that a superior court may not issue oral orders governing temporary custody at a pre-trial hearing in an action concerning divorce and child custody. Nor does he identify any evidence that April's temporary custody over the children gave her an advantage in arguing for permanent custody. In fact, April did not even receive the custody ordered by the court, because Michael violated the order.

Alaska Statute 25.24.150(a) states: "In an action for divorce ..., the court may, ... during the pendency of the action, ... make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper...." The statute includes no hearing requirement. We have held in the past that due process requires an evidentiary hearing before custody modification,[18] even though Alaska statutes do not. But procedural due process analysis involves a balancing in which the importance of a

---

15. In addition, at the July 23, 2010 hearing, the court explained to Michael at length that it did not reject or fail to consider his opposition to April's proposed child support calculations, even though the original calculations were signed before the court received Michael's response.

16. For the same reasons, we reject Michael's argument that the superior court violated his due process rights by not granting his motion to vacate the orders signed October 13. We are also not persuaded by Michael's suggestion that there is evidence that the superior court did not, in fact, consider the opposition he filed on October 13. Nor is Michael correct in his argument that the superior court erred under Alaska Civil Rule 77(d) in inviting April to file a late reply to

Michael's October 13 opposition. Rule 77(d) does not prohibit a judge from allowing additional filing time.

17. *See, e.g., First Nat'l Bank of Anchorage v. State, Office of Pub. Advocacy*, 902 P.2d 330, 335 (Alaska 1995) (rejecting claim that "superior court erred in denying ... Rule 60(b) motion because the court failed to provide any written statement explaining its decision").

18. We have reiterated this conclusion in numerous cases. *See, e.g., Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998). It can ultimately be traced back to the due process analysis in *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983).

party's interest plays a significant role.[19] Because our precedents do not imply that a one-month temporary custody order largely extending the status quo requires notice and a hearing under principles of due process, we hold that the order did not violate Michael's right to due process.

### D. Michael's Arguments Concerning The Domestic Violence Finding, Reliance On The Custody Investigator's Testimony, And The Failure To Make Additional Findings Are All Without Merit.

#### 1. The domestic violence finding

■ Michael argues that the superior court erred in finding, during the September 29, 2009 pre-trial hearing, that Michael committed domestic violence against April and in issuing a domestic violence protective order against him. Michael misunderstands the order issued by the superior court. It was not a domestic violence protective order issued under AS 18.66.100; it was a protective order issued under AS 25.24.140(b)(1) and (4). Those statutory sections provide that the court may, during the pendency of a divorce, issue orders "providing for the freedom of each spouse from the control of the other spouse" and "restraining a spouse from communicating directly or indirectly with the other spouse." The order issued by the superior court was limited to these areas. And, while AS 25.24.140(b)(1) and (4) do not require a hearing before an order is issued, Michael was afforded notice of April's reasons for seeking the protective order and a full opportunity to question April about the basis for the sought-after order

#### 2. Reliance on the custody investigator's testimony

■ Michael attacks the superior court's award of sole legal and primary physical custody to April on various grounds, including the due process and judicial bias claims

that have already been discussed above. But Michael dedicates the majority of his argument to the claim that the superior court relied improperly on the testimony of the custody investigator in this case.

As part of its written findings of fact at the conclusion of the case, the superior court found that "the custody investigator's testimony with regard to the father and the effect the father's conduct is having on the children to be credible and reliable." The court also noted that it "shares the custody investigator's concerns that the children's environment is not stable or satisfactory." Finally, the court disagreed with the custody investigator's recommendation that Michael's visitations should be supervised, while at the same time recognizing that the investigator "is right to express concerns in this regard" and was justified in making the recommendation.

■ Trial courts may choose to rely on the testimony of court-appointed custody investigators in making custody determinations.[20] Michael's brief on appeal simply reiterates the unsuccessful efforts he made to impeach the credibility of the custody investigator before the superior court. But this is not enough, for "[w]e give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[21] We find no error in the superior court's reliance on the custody investigator's testimony and recommendation.

#### 3. Failure to make additional factual findings

■ Michael argues that the superior court erred when it "failed to make any findings of fact beyond those that specifically supported [its] custody and property decisions." For example, Michael criticizes the

---

19. *See Smith v. Groleske*, 196 P.3d 1102, 1106 (Alaska 2008) (quoting *Alyssa B. v. State, Dep't of Health & Soc. Servs.*, 123 P.3d 646, 649 (Alaska 2005)) (setting out three-part balancing test between private interest, government interest, and value of additional process in reducing error).

20. *See, e.g., Cusack v. Cusack*, 202 P.3d 1156, 1160 (Alaska 2009) (affirming trial court's heavy reliance on findings of custody investigator).

21. *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

superior court for not making findings regarding his allegation that "this case was a pre-meditated act on the part of Mrs. Berry and that she acted in contempt of [court] and committed perjury ... throughout the entire proceedings."

These arguments are meritless. A trial court is under no obligation to make findings on every factual assertion raised by the parties, provided that the court has "resolved each critical factual dispute." [22] Here, the court's findings are sufficient for our review under Alaska Civil Rule 52.[23]

### E. It Was Error To Award Attorney's Fees.

■■ Michael argues that the superior court should not have awarded attorney's fees to either party.

In its findings of fact and conclusions of law, the superior court noted that the parties'

> estate has a value of approximately—$54,012. The parties have made things worse by conducting their affair such that $32,747 in attorney's fees has been added to their financial problems. Although the husband was recalcitrant throughout the divorce, the wife behaved irresponsibly by taking on $32,747 in attorney[']s fees....

The court ordered Michael to bear 71.5% of the marital debt and to pay April $6,000 in attorney's fees:

> With this payment the parties will bear the current negative value of the estate plus attorney's fees in approximate proportion to their income and the husband will bear all post separation debt payments. This award is made in consideration of the husband's recalcitrant behavior and the wife's

financial irresponsibility in taking on such large attorney's fees debt.

We have held that "[t]he award of attorney's fees in a divorce action ... rests within the broad discretion of the trial court and will not be disturbed on appeal unless it is 'arbitrary, capricious, or manifestly unreasonable.'"[24] We recently summarized the law governing attorney's fees in divorce cases as follows:

> A prevailing party in a civil case is normally entitled to an award of attorney's fees, per Rule 82. Divorce cases are usually excepted from this general rule; fees awards in divorce cases are typically based on the parties' relative economic situations and earning powers, rather than prevailing party status. This "divorce exception" to Rule 82 is based on a broad reading of AS 25.24.140(a)(1), and on the reality that there is usually no prevailing party in a divorce case.[25]

■■ We have also noted that "[t]he purpose of awarding attorney's fees in divorce proceedings is to level the playing field, which means taking into account not only earning capacities and separate resources, but also the distribution of marital assets itself."[26] "[W]hen the parties' economic status is generally equal, it is ordinarily error to make any award of costs or fees."[27] As we explained in *Edelman v. Edelman*:

> The trial court may also increase an award of attorney's fees where a party has acted in bad faith or vexatiously. The court must follow a two-step process to make an award of enhanced fees: It must determine the appropriate fee award under the general rule and then it may increase

22. See Urban Dev. Co. v. Dekreon, 526 P.2d 325, 328 (Alaska 1974) (holding that rule does not require findings to be made on all questions so long as trial court "resolved each critical factual dispute").

23. Rule 52(a) provides, in relevant part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon...."

24. Ferguson v. Ferguson, 195 P.3d 127, 130 (Alaska 2008) (quoting Hopper v. Hopper, 171 P.3d 124, 129 (Alaska 2007)).

25. Johnson v. Johnson, 239 P.3d 393, 399 (Alaska 2010) (footnotes omitted).

26. Dragseth v. Dragseth, 210 P.3d 1206, 1212 (Alaska 2009) (citing Tybus v. Holland, 989 P.2d 1281, 1289 (Alaska 1999); Money v. Money, 852 P.2d 1158, 1165 (Alaska 1993); Siggelkow v. Siggelkow, 643 P.2d 985, 989 (Alaska 1982)).

27. Edelman v. Edelman, 61 P.3d 1, 5 (Alaska 2002) (quoting L.L.M. v. P.M., 754 P.2d 262, 264 (Alaska 1988)).

that award to account for a party's misconduct. "Failure to follow this two-step process is an abuse of discretion." Additionally, the court "must make explicit findings of bad faith or vexatious conduct and clearly explain its reasons for deviating from the general rule." "When the court finds that one spouse's misconduct has unnecessarily increased the other spouse's costs, the court must identify the nature and amount of these increased costs." [ [28] ]

In this case only April hired an attorney; by the end of the proceedings she had incurred $32,747 in legal fees. The superior court ordered Michael to pay $6,000 to April for her attorney's fees "in consideration of" both parties' misconduct.

In making this decision, the superior court did not follow the two-step procedure we have established. First, it should have determined how much of April's $32,747 in attorney's fees would have been allocated to each party under "the general rule," [29] without considering misconduct—that is, how much of the fees each party would have had to bear in order "to level the playing field." [30] Next, it should have made explicit findings of bad faith or vexatious conduct by either party.[31]

We held in *Kowalski* that failure to follow the two-step process of reasoning is an abuse of discretion.[32] We thus reverse and remand the superior court's attorney's fees award. Ordinarily, an error by the trial court in the award of attorney's fees would not require reexamination of the property division. But because the superior court's division of the marital assets and debts in this case was based in part upon its attorney's fees award,[33] we remand the division of marital property as well in order to allow the superior court to adjust the property division if necessary following its decision on attorney's fees.

## V. CONCLUSION

We AFFIRM the superior court in all respects but one. We REVERSE the superior court's attorney's fees order and REMAND for further proceedings consistent with this opinion.

CHRISTEN, Justice, not participating.

---

**28.** *Id.* at 5–6 (footnotes omitted).

**29.** *Id.* at 6.

**30.** *Dragseth*, 210 P.3d at 1212.

**31.** *See Kowalski v. Kowalski*, 806 P.2d 1368, 1373 (Alaska 1991). Indeed, as to the court's suggestion that Michael should have to bear some of April's fees due to his recalcitrance, we stated in *Kowalski* that "mere ... contentiousness over difficult issues" does not, in itself, "constitute bad faith or vexatious conduct." *Id.* at 1373. Nor should April's decision to hire legal counsel be held against her or factored into the award of fees.

**32.** *Id.*

**33.** In response to Michael's concern that the superior court treated April's attorney's fees as part of "the marital debt," we also take this

opportunity to clarify that attorney's fees incurred in a divorce proceeding do not constitute part of the marital estate in Alaska. AS 25.24.160(a)(4), which governs the division of marital property, limits the division to property "acquired only during marriage" unless "the balancing of the equities" requires invasion of separate property. *See McDougall v. Lumpkin*, 11 P.3d 990, 993 (Alaska 2000); *see also Sampson v. Sampson*, 14 P.3d 272, 276 (Alaska 2000). In general, we have stated that "the date for segregating marital from post-marital property is ordinarily the date of the functional termination of the marriage." *Hanlon v. Hanlon*, 871 P.2d 229, 231 (Alaska 1994) (citing *Schanck v. Schanck*, 717 P.2d 1, 3 & n. 7 (Alaska 1986)). Thus attorney's fees such as April's, which were incurred after the couple's effective separation, do not form part of the marital estate.