NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SVITLANA McGRADY, | ) | |
| | ) | Supreme Court Nos. S-14577/14617 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-10-09425 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CHADWICK McGRADY, | ) | AND JUDGMENT* |
| | ) | |
| Appellee and | ) | No. 1453 – March 20, 2013 |
| Cross-Appellant. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Svitlana McGrady, pro se, Palmer, Appellant/Cross-Appellee. Kenneth J. Goldman, Law Office of Kenneth J. Goldman, P.C., Palmer, for Appellee/Cross-Appellant.

Before: Fabe, Chief Justice, Stowers, and Maassen, Justices. [Carpeneti, and Winfree, Justices, not participating.]

I.     INTRODUCTION

A husband brought a divorce proceeding against his wife, a citizen of Ukraine. He sought sole legal and shared physical custody of the couple's son, and although the wife also sought sole legal and primary physical custody of the child, the

---

\*      Entered under Appellate Rule 214.

superior court awarded sole legal custody of the child to the husband and shared physical custody to both parents.

The wife appeals, arguing that the superior court improperly weighed the evidence at trial to conclude that she, and not the husband, had engaged in domestic violence. She also argues that the superior court improperly considered her uncertain immigration status when making its custody determinations. The husband cross-appeals, arguing that the superior court erred in awarding the wife shared physical custody of the child after finding that she had engaged in domestic violence. He also appeals the superior court's award of attorney's fees to the wife. Because the superior court's findings and decision are amply supported by the trial record, we affirm the decisions of the superior court.

## II. FACTS AND PROCEEDINGS

### A. The Marriage And Divorce

Svitlana Shamrylo McGrady (Lana) is a citizen of Ukraine who came to the United States on a tourist visa in 2004. Lana met Chadwick McGrady online. At the time, Lana was living in Los Angeles, California. Chadwick bought Lana a ticket to visit him in Alaska in December 2008, and during this three-month visit Lana became pregnant. Lana made a second trip to Alaska to visit Chadwick in April 2009. The couple married in June of that year, and their son Alex was born in November 2009.

Lana and Chadwick's marriage quickly unraveled. Chadwick filed an ex-parte petition for a short-term domestic violence restraining order against Lana in June 2010, arguing that Lana committed domestic violence. The trial court denied Chadwick's ex-parte petition after finding that there was no emergency and instead ordered a hearing on a long-term restraining order. Chadwick then withdrew his petition.

The couple separated in July 2010. Chadwick filed for divorce that same month.

**B.      Lana's Immigration Issues[1]**

Lana initially came to the United States on a tourist visa, but enrolled in a technical school and was granted a student visa.  After the marriage, Chadwick started a spousal petition for Lana to obtain status as a conditional resident in the United States.

Lana had an immigration interview in May 2010,[2] and according to Chadwick, during that interview immigration authorities discovered discrepancies between what Lana and Chadwick had reported on the spousal petition and what Lana had reported in her application for a tourist visa.  In the interview, Lana denied that she had ever previously been married or had any other children.  In her tourist visa application, however, she claimed that she was married and had a child in the Ukraine.

Chadwick withdrew his spousal petition for Lana when they separated in July 2010.  Lana's immigration status was unknown at the time of the divorce and custody proceedings.

**C.      The Divorce And Custody Proceedings**

After Chadwick filed for divorce, Lana moved for an interim custody arrangement under which she would have primary physical custody of Alex with limited visitation for Chadwick.  She also sought interim spousal support and attorney's fees.  Chadwick also filed a motion for interim custody seeking shared physical custody of Alex and an order prohibiting Lana from removing Alex from Alaska or the country.  He opposed Lana's request for interim spousal support and fees.  The superior court granted

---

[1]      The record as to Lana's immigration issues is limited.  Lana invoked her Fifth Amendment privilege against self-incrimination in response to most of the trial court's questions involving her immigration status.  She also did not provide this information in her briefing.

[2]      An adjustment of status interview occurs any time a United States citizen petitions for an alien to obtain legal permanent residence in the United States. 8 C.F.R. § 245.6 (2011).

primary physical custody to Lana with overnight visitation for Chadwick. It also ordered limited spousal support for Lana and ordered Chadwick to pay $5,000 in interim attorney's fees.

The trial was set for March 2011. In his trial brief, Chadwick requested sole legal custody of Alex, but shared physical custody "on a 50/50 basis, on a week on/week off schedule." Lana reiterated her request for sole legal and primary physical custody of Alex.

At trial, both parties presented evidence on domestic violence. Chadwick testified that Lana hit him several times, threw dishes at him, threw her wedding ring at him, hit him in the head with a laptop, and punched him in the jaw. Chadwick also testified that Lana threatened to move away with Alex and yelled at him in front of the child.

Lana testified that Chadwick called her profane names, told her that she's "nobody, nothing in this country," and repeatedly threatened to divorce her and report her to immigration. She testified that on one occasion Chadwick angrily threw his iPhone down in front of her, and on another occasion threw a remote control about a meter from her, and threatened to kill her. Lana also admitted to "slapping" Chadwick in the face.

Lana called an expert, Allen Levy, to testify on the domestic violence issue. Levy's testimony focused on Chadwick's alleged emotional and "economic" abuse. He testified that Chadwick demonstrated a "sense of entitlement," "vindictiveness," and "a lack of empathy." Levy also testified that the "emotional abuse" and "manipulation" he recognized from Chadwick's deposition were qualities of batterers.

The superior court determined that the marriage could not be reconciled and issued a divorce decree. The superior court awarded sole legal custody of Alex to Chadwick after finding that Chadwick was less entrenched in his position regarding

parenting decisions, and that if Lana were awarded sole legal custody it was her intention to leave Alaska and "do little to foster the relationship between [Chadwick] and [Alex]." The superior court awarded shared physical custody of Alex to Lana and Chadwick. In making this determination, it considered the best interest factors from AS 25.24.150(c).[3]

---

[3] AS 25.24.150(c) mandates that trial courts determine child custody in accordance with the best interests of the child by considering the following nine factors:

> (1) the physical, emotional, mental, religious, and social needs of the child;
>
> (2) the capability and desire of each parent to meet these needs;
>
> (3) the child's preference if the child is of sufficient age and capacity to form a preference;
>
> (4) the love and affection existing between the child and each parent;
>
> (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
>
> (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
>
> (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or

(continued...)

First, the superior court concluded that both parties were able to meet Alex's physical, mental, and social needs, but that Lana's feelings against Chadwick could affect her ability to allow Alex to develop emotionally. Second, it found that Alex was too young and lacked capacity to form a preference as to custody. Third, it found that Chadwick's home was the most physically stable and consistent home that Alex had known, but declined to find that Alex had been adversely affected by the parties' shared custody since the separation.

The superior court was "unconvinced" that Lana would ever foster an open and loving relationship between Alex and Chadwick because she exhibited a "highly negative attitude" toward Chadwick and his parenting abilities. The superior court considered Lana's inability to control her emotions during the couple's marriage and subsequent separation to be a form of "emotional abuse" and expressed concern that Lana's "attitude will not be kept from Alex during his formative years."

The superior court then addressed the issue of domestic violence. It noted that 8 U.S.C. § 1186a[4] might provide some remedy for Lana's immigration status if she were to show that she or Alex were battered by or subject to extreme cruelty by

---

[3](...continued)
> physical well-being of the child;

> (9) other factors that the court considers pertinent.

[4] Under 8 U.S.C. § 1186a(c)(4)(C), an alien married to a United States citizen may petition for a hardship waiver from the requirements for conditional permanent resident status if the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse was battered by or the subject of extreme cruelty perpetrated by the citizen spouse and the alien was not at fault in failing to meet the requirements for conditional permanent resident status. 8 U.S.C. § 1186a(c)(4)(C) (2011).

Chadwick.[5]  But the superior court found that there was no credible evidence that Chadwick committed acts of domestic violence, battered, or subjected Lana to extreme cruelty.  The superior court did find, however, that Lana committed "an act or acts" of domestic violence, but it concluded that these were "situational" and would not impact Alex or Lana's ability to parent Alex.  It "[did] not believe that [Lana] was the helpless captive that she intended to portray to the court," and found her to "have a tendency to exaggerate some points in her testimony, most often when painting [Chadwick] in a bad light."  It found her testimony to be "overall . . . less credible" than Chadwick's.

The superior court also ordered Chadwick to pay Lana $20,000 in additional attorney's fees and costs.

Lana now appeals both of the superior court's custody awards.  Chadwick appeals the superior court's shared physical custody award and its award of $25,000 in attorney's fees to Lana.

## III.   STANDARD OF REVIEW

"Because the superior court has broad discretion in deciding child custody issues," we will not reverse a superior court's custody decision unless the superior court "abused its discretion or the controlling factual findings are clearly erroneous."[6]  "Abuse of discretion is established if the trial court considers improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned

---

[5]      The superior court also expressly noted that "the court makes no finding as to [Lana's] continued status."

[6]      *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 472 (Alaska 2012) (quoting *Iverson v. Griffith*, 180 P.3d 943, 945 (Alaska 2008)) (internal quotation marks omitted).

disproportionate weight to particular factors while ignoring others."[7] We will not disturb decisions under this standard unless the results are "clearly unjust."[8]

We review an award of attorney's fees for abuse of discretion.[9] A trial court's attorney's fee award "will not be disturbed on appeal unless it is arbitrary, capricious, or manifestly unreasonable."[10]

## IV.    DISCUSSION

### A.    Lana's Appeal

#### 1.    The superior court did not err in finding that Lana engaged in domestic violence and Chadwick did not.

Lana argues that the superior court erred when it found that she had engaged in domestic violence and Chadwick had not. She contends that the superior court should have recognized that Chadwick exercised coercive control over her as a form of non-physical domestic violence.

After a full trial in which both Lana and Chadwick presented evidence on domestic violence, the superior court made express findings that Lana had committed "an act or acts" of domestic violence and Chadwick had not. The superior court found Lana to be "less credible than [Chadwick]" and it "[did] not give great weight to [her] testimony, as [she] is found by the [c]ourt to have a tendency to exaggerate some

---

[7]    *Id.* (quoting *Smith v. Weekley*, 73 P.3d 1219, 1222 (Alaska 2003)) (internal quotation marks omitted).

[8]    *Id.* at 472-73 (quoting *Cartee v. Cartee*, 239 P.3d 707, 712 (Alaska 2010)) (internal quotation marks omitted).

[9]    *Albrecht v. Alaska Tr., LLC*, 286 P.3d 1059, 1063 (Alaska 2012) (citing *Weimer v. Cont'l Car & Truck, LLC*, 237 P.3d 610, 613 (Alaska 2010)).

[10]    *Berry v. Berry*, 277 P.3d 771, 774 (Alaska 2012) (quoting *Ferguson v. Ferguson*, 195 P.3d 127, 130 (Alaska 2008)) (internal quotation marks omitted).

points . . . most often when painting [Chadwick] in a bad light." It also "did not believe" that Lana "was subjected to actions or words that placed her in fear of her physical safety." The superior court similarly discredited the testimony of Lana's expert, Mr. Levy.It stated:

> It is the court's firm conviction that Mr. Levy's opinion went far beyond what a similarly situated expert would have been able to opine by reading a transcription of the deposition by [Chadwick]. Perhaps even more incredibly, Mr. Levy opined that [Lana's] acts of domestic violence were somehow excused because she was reacting to what he unreasonably proclaimed to be intimate terrorism battering by [Chadwick]. It is virtually inconceivable to this court that any other court expert would ever make this statement without having spoken with the person he perceives to be the victim, to characterize [Lana's] domestic violence, which is the only proven domestic violence in this court case, as violent resistance diminishes any value that Mr. Levy was able to provide as an expert witness to this court.

Because the superior court concluded that Lana and her expert witness were not credible, and because the record does not otherwise contain evidence to substantiate Lana's allegations, it was not error for the superior court to conclude that Lana engaged in domestic violence and Chadwick did not.

### 2. The superior court did not improperly consider Lana's immigration status.

Lana also argues that the trial court improperly relied on her uncertain immigration status when making its custody determinations. In its findings, the superior court concluded that Lana made untrue statements in order to obtain a tourist visa. The superior court also stated that it was "aware of 8 USC [§] 1186(a), which provides that there may be some remedies in [Lana's] immigration status if she shows that she or her child were battered or subject to extreme cruelty." The superior court then made the

following comment: "Obviously, the court makes no finding as to defendant's continued status." These references to Lana's immigration status do not suggest that the superior court relied on Lana's status in making its custody determinations except to the extent that it took this information into account in assessing Lana's credibility and motivation to claim domestic violence by Chadwick. We therefore find no evidence in the record to support Lana's contention that the superior court improperly considered her immigration status.

### B. Chadwick's Cross-Appeal

#### 1. Chadwick has waived any claim that the superior court erred by awarding the parents shared physical custody of Alex.

Chadwick cross-appeals, arguing that the superior court erred by awarding shared physical custody of Alex to both parents without properly assessing whether Lana's domestic violence would endanger the health or safety of Alex or Chadwick, or whether Lana had a history of domestic violence sufficient to raise a presumption that sole or primary physical custody of Alex should be awarded to Chadwick.[11] But at trial Chadwick advocated for shared physical custody "on a 50/50 basis." And he expressly took the position that the domestic violence provisions of AS 25.24.150 did not apply to either party in this case. In his closing statement, Chadwick's attorney had the following interchange with the superior court:

---

[11] Chadwick also argues that the superior court erred by awarding shared physical custody of Alex to both parents after finding that Lana was unwilling to foster a relationship between Alex and Chadwick. But this finding was one of many that the superior court made when conducting its best-interests analysis under AS 25.24.150 and determining that Chadwick should have sole legal custody. Chadwick has presented no evidence suggesting that the court disregarded this factor or gave disproportionate weight to other factors when making its physical custody award. *See Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

CHADWICK'S ATTORNEY: But of course, if the court finds domestic violence by Lana, as the evidence probably is greater in terms of preponderance, the court then couldn't give her sole legal or primary physical custody of the child absent of taking the batterer's class. . . .

THE COURT: Are you asking the court to invoke AS 25.24.150?

CHADWICK'S ATTORNEY: Frankly, Judge, I really don't think it applies here to either party.

Because Chadwick was granted the shared physical custody award he sought, he has waived any claim of error on the grounds that the award was improper.[12] "As a general rule, this court will not consider arguments attacking a judgment for the first time on appeal."[13]

### 2. The superior court did not abuse its discretion in awarding attorney's fees.

Once the divorce proceeding was initiated, the superior court ordered Chadwick to pay $5,000 in interim attorney's fees to Lana. Following trial, the superior court ordered Chadwick to pay an additional $20,000 in attorney's fees and costs.[14] In its order, the superior court stated that it did not agree with Lana's litigation stance and found it to be "unreasonable, less than credible in part, and wasteful to the extent that expert witness fees were spent on Mr. Levy." Nevertheless, it ordered Chadwick to pay

---

[12] Moreover, the superior court impliedly found that Lana had no history of domestic violence and that she would not endanger the health or safety of Alex or Chadwick when it found that Lana's "act or acts" were "situational" and would not have "an influence on Alex or on [Lana's] ability to parent Alex."

[13] *Koller v. Reft*, 71 P.3d 800, 804 n.6 (Alaska 2003) (quoting *Mapco Express, Inc. v. Faulk*, 24 P.3d 531, 540 n.29 (Alaska 2001)).

[14] This amount was less than the "$25,000 to $40,000" requested by her attorney.

fees and costs based on a finding that Chadwick's "superior financial position and his profession would make it easier for him to keep his side of the litigation costs at a minimum." Chadwick argues that the superior court's fee award was "arbitrary" and "unreasonable" because it was based on this finding. He also argues that the fee award should have been reduced or eliminated after the superior court found Lana's litigation stance to be "unreasonable, less than credible in part, and wasteful."

But finding that Lana's litigation strategy was unreasonable does not preclude the superior court from awarding her attorney's fees and costs under AS 25.24.140(a)(1). That provision allows a trial court to award attorney's fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend a divorce or custody action.[15] This standard ensures that both spouses have the proper means to litigate the divorce action on a fairly equal plane.[16] Trial courts also have the discretion to modify an award of attorney's fees where the opposing party has acted in bad faith or engaged in vexatious conduct.[17] The superior court must first determine whether fees are appropriate under the general rule looking to the parties' economic situations, and it may then modify any award based on bad faith or vexatious conduct by one of the parties.[18]

As noted above, the superior court expressly found that Chadwick's "superior financial position and his profession would make it easier to keep his side of

---

[15]     *See* AS 25.24.140(a)(1).

[16]     *Id.*; *see also Rodvik v. Rodvik*, 151 P.3d 338, 351 (Alaska 2006) (citing *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987)).

[17]     *Rodvik*, 151 P.3d at 351 (citing *Kowalski v. Kowalski*, 806 P.2d 1368, 1373 (Alaska 1991)).

[18]     *Beal v. Beal*, 88 P.3d 104, 122 (Alaska 2004) (citing *Wright v. Wright*, 904 P.2d 403, 410-11 (Alaska 1995)).

the litigation costs at a minimum." The record thus shows that the superior court properly determined that fees were appropriate based on the relative economic positions of the parties.[19] We have previously concluded that conduct will not meet the standard for vexatiousness unless it is "baseless and unsupported,"[20] or untenable and "devoid of merit."[21] The superior court found that Lana's litigation stance was "unreasonable, less than credible in part, and wasteful" but not that it was baseless or devoid of merit. Because Chadwick has not shown that Lana's conduct met the standard for vexatiousness, the superior court did not abuse its discretion in awarding fees based on the relative economic positions of the parties.

Chadwick next argues that the superior court improperly awarded fees without requiring production of accurate itemized billing records. We have previously held that "where the rule authorizes reasonable actual fees, a court may not award attorney's fees to a party who has not itemized his or her requested fees, when the opposing party has requested such itemization."[22] But the record in this case indicates that Chadwick consented to the submission of billing totals and did not request itemization. In a colloquy between the superior court and the attorneys for Chadwick and Lana, the parties stated as follows:

> THE COURT: We're getting an affidavit of what the attorney's fees total were.
>
> CHADWICK'S ATTORNEY: Okay.

---

[19] The stray comment about Chadwick's profession was not relevant to the superior court's award.

[20] *Johnson v. Johnson*, 239 P.3d 393, 404 (Alaska 2010).

[21] *State, Dep't of Revenue, Child Support Enforcement Div. v. Allsop*, 902 P.2d 790, 795-96 (Alaska 1995).

[22] *Marron v. Stromstad*, 123 P.3d 992, 1014 (Alaska 2005).

. . . .

LANA'S ATTORNEY: Well, that's not what he's asking for because that's — has privileged information. He's just asked for [an] affidavit from you saying what the total fees are.

CHADWICK'S ATTORNEY: Sure.

. . . .

LANA'S ATTORNEY: My understanding was just an affidavit from me because sometimes the billing has protected materials, so an affidavit from me summarizing the costs and so I was explaining that's all . . . .

THE COURT: Exactly.

LANA'S ATTORNEY: . . . he needs and he said that'll be quicker and easier.

. . . .

CHADWICK'S ATTORNEY: That's fine.

Because Chadwick did not object to the submission of affidavits stating total fees and did not request itemization, we conclude that the superior court did not abuse its discretion in awarding fees without itemized records.

Because the award in this case was not "arbitrary, capricious or manifestly unreasonable,"[23] we affirm the superior court's award of $25,000 in attorney's fees to Lana.

## V.    CONCLUSION

We AFFIRM the decisions of the superior court.

---

[23]    *See Berry v. Berry*, 277 P.3d 771, 774 (Alaska 2012) (quoting *Ferguson v. Ferguson*, 195 P.3d 127, 130 (Alaska 2008)) (internal quotation marks omitted).