NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| TATIYANNA PEARCE, n/k/a TATIYANNA VENABLE, | ) ) ) Supreme Court No. S-16755 |
| Appellant, | ) ) ) Superior Court No. 3AN-17-00473 CI |
| v. | ) |
| ALEXANDER PEARCE, | ) MEMORANDUM OPINION ) AND JUDGMENT* ) |
| Appellee. | ) No. 1708 – January 16, 2019 ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Adam Gulkis, The Law Office of Adam Gulkis, Anchorage, for Appellant. Maurice N. Ellis, Law Office of Maurice N. Ellis, Anchorage, and Herbert M. Pearce, Law Office of Herbert M. Pearce, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.     INTRODUCTION

The superior court held a hearing on a wife's petition for a long-term domestic violence restraining order against her husband. After granting the order, and at the parties' request, the court turned to their pending divorce. The parties reached a settlement agreement on the record for the division of their marital property.

---

\*     Entered under Alaska Appellate Rule 214.

The wife later filed a motion for the attorney's fees incurred in the domestic violence protective proceedings. The superior court determined, however, that the parties had intended their settlement to resolve all outstanding issues, including the attorney's fees claim in the domestic violence proceedings, and it denied the motion for attorney's fees. The wife appealed.

On review of the hearing testimony, we conclude that the parties' agreement addressed only their property dispute and did not preclude the wife's claim for attorney's fees in the domestic violence protective proceedings. We therefore reverse and remand for further proceedings on the attorney's fees claim.

## II. FACTS AND PROCEEDINGS

### A. Facts

Alexander Pearce and Tatiyanna Venable were married in September 2016. In February 2017 Tatiyanna petitioned for a domestic violence protective order, alleging that Alexander had shoved her against a chair during an argument, thrown her to the floor and held her there, and refused to let her leave their apartment. A magistrate judge issued a 20-day temporary protective order and scheduled a hearing to be held a few weeks later on a long-term order. In the meantime, Alexander filed a complaint for divorce.

The domestic violence case was administratively reassigned to the superior court judge handling the divorce. The court held the hearing on Tatiyanna's request for a long-term protective order over two days in March and April. On the second day, April 7, the court made its oral decision on the record, finding by a preponderance of the evidence that Alexander had committed an assault against Tatiyanna; it therefore granted the long-term protective order.

By agreement of the parties, the court then turned its attention to the divorce case and specifically the division of marital property. The parties held little property in common and were able to agree to its disposition on the record. The court questioned

both parties to make sure they understood the terms of their agreement, then concluded that the agreement was "a fair and equitable way to divide the marital estate." The court invited Tatiyanna's counsel to "file the divorce decree and the findings" and announced its intention to "close out these two cases."

Three days later Tatiyanna filed a motion seeking $4,229.75 in attorney's fees for the domestic violence protective proceedings. Alexander opposed the motion, arguing that the parties' agreement was a "global settlement agreement resolving all [of the] outstanding issues that existed between them," including any outstanding claims for fees. The superior court agreed with Alexander, finding that "both parties testified that they had reached an agreement the purpose of which was to resolve all issues in this case" and that the claim for attorney's fees for the domestic violence protective proceedings had thus been resolved by agreement.

Tatiyanna appeals from the order denying attorney's fees.

## III. STANDARD OF REVIEW

We review a trial court's interpretation of a settlement agreement "using contract principles, and the proper meaning of a contract is a legal question, which we review de novo."[1] But "[w]hen the [trial] court considers extrinsic evidence, we review its factual determinations for clear error and inferences for substantial evidence."[2]

## IV. DISCUSSION

### A. The Record Does Not Support A Finding That Tatiyanna Intended The Parties' Property Settlement To Resolve Her Claim For Attorney's Fees For The Domestic Violence Protective Proceedings.

A petitioner who successfully obtains a long-term domestic violence

---

[1]     *Easley v. Easley*, 394 P.3d 517, 521 (Alaska 2017).

[2]     *Id.* at n.12 (citing *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016)).

protective order generally has a claim for the attorney's fees incurred in obtaining it.[3] The central issue in this appeal is whether Tatiyanna's claim for those fees was resolved by the parties' settlement of the property issues in the divorce.

### 1. The superior court's order denying attorney's fees

In its order denying Tatiyanna's claim for attorney's fees, the superior court described the domestic violence protective proceedings and the parties' agreement to also attempt to resolve their property issues. The court explained that "an agreement was reached as to all issues of disputed property" and the "agreement was placed on the record." The court then explained why it believed that the parties' agreement included Tatiyanna's claim for fees on the domestic violence petition:

> There was no mention that attorney fees were being requested or left for further determination by the court. Indeed, following further inquiry by the court both parties testified that they had reached an agreement the purpose of which was to resolve all issues in this case and that they believed their agreement would achieve the purpose. Both indicated that they understood this to be a "done deal" and asked the court to accept the [a]greement as a fair and equitable way to fully resolve the case. It is the court's clear impression and the court finds that both parties wished to fully resolve the litigation, separate complete[ly] from each other, end their litigation and move on with their lives. After receiving the parties' testimony the court issued its Findings, adopted the parties' agreement as the Order of the Court, and divorced the parties. No issues were reserved for later determination by the court.

---

[3]     *See Lee-Magana v. Carpenter*, 375 P.3d 60, 64-65 (Alaska 2016) ("Notwithstanding the discretionary nature of [AS 18.66.100(c)(14), governing awards of attorney's fees in domestic violence cases], it would seem to be the exceptional case in which the superior court declines to award attorney's fees to the prevailing petitioner.").

The court acknowledged that "absent the parties' agreement[,] *Lee-Mag[a]na*[4] and [AS] 18.66.100(c) would have dictated an award of attorney fees," but it held that "the parties' agreement now precludes such an award." It reiterated that "the purpose of the [a]greement was to fully and completely resolve all litigation between the parties" and that this was demonstrated by Tatiyanna's own testimony "that the purpose of the parties' [a]greement was to resolve *all* issues in the case." (Emphasis in original.)

Because the settlement was reached on the record of the April 7 hearing, we review that record to determine de novo the scope of the parties' agreement.[5] To the extent the superior court made findings of intent based on its recollection of the parties' hearing testimony, we review those findings for clear error.[6] We conclude that the record does not support the court's findings about the parties' testimony; those findings are clearly erroneous. And we conclude that the parties' agreement was very specifically limited to the division of property in the divorce and did not purport to resolve all issues between the parties.

### 2. The colloquy on the property division

The relevant on-record discussion begins at the close of the evidence on Tatiyanna's petition for a long-term domestic violence protective order. The court made extensive findings about the parties' credibility before concluding "by a preponderance of [the] evidence that [Alexander had] committed assault against [Tatiyanna], which is a crime involving domestic violence"; the court therefore entered the protective order.

---

4    *See id.*

5    *See Easley*, 394 P.3d at 521.

6    *See id.* at n.12.

While working through the order's details with the parties,[7] the court noted that Tatiyanna was living in the parties' apartment; it therefore ordered Alexander to return the apartment parking pass and mailbox keys to her. The court also raised the issue of the parties' truck, and Alexander's attorney said, "[A]lthough [we] certainly understand that you have the authority to grant [Tatiyanna] possession of that vehicle under the terms of this [domestic violence] order, that is a disputed marital asset." The court replied, "I understand that and . . . I will make clear that to the extent I am giving her possession of the [truck], that would be subject to changing in the divorce, in the property division in the divorce . . . ." The court went on to say that it was "not going to make any findings about property . . . . [it would] deal with that in the divorce property context."

Despite this initial intent to reserve divorce issues for later, the hearing eventually did reach "the divorce property context." After further discussion of some items of personal property — a ring and a camera — that Alexander wanted to retrieve from the apartment without running afoul of the domestic violence protective order, Alexander's attorney made a suggestion: Because there were "no issues of health insurance or retirement in this case" and they had already discussed "the primary" property issue, the truck, "[i]s there any reason that we can't simply divorce these two kids today and reserve those issues?" Tatiyanna's attorney responded, "No problem with bifurcating the issues."

After a whispered conversation, Alexander's counsel proposed that they resolve the property issues after all: "Your Honor, with your orders regarding the return of the parking pass and the mailbox key, and [Tatiyanna's] obligation to attempt to locate

---

[7]     AS 18.66.100 sets out the provisions such orders may contain: These address such issues as limitations on contact, proximity, weapons possession, child custody, drug use, and rehabilitation programs.

the ring and the camera, [Alexander] wants this done today and he's willing to simply give [Tatiyanna] the truck . . . . There's no other property issues between the parties." A short time later Alexander's father addressed the court: "Let['s] get these parties separated and have no responsibilities with one another whatsoever."

The court obliged, stating that it would "take some testimony so that [it could] make findings about the divorce . . . ." After first concluding its discussion of the domestic violence protective order, the court turned to the issues in the divorce. Alexander testified first, and the court, in voir dire, summarized its understanding of the parties' agreement on dividing their marital estate, consisting of the truck, the apartment, two pets, and a few other minor items. The court asked Alexander, "Is that the agreement that you are making . . . *to resolve the property issues* in this case?" (Emphasis added.) Alexander agreed that it was. The court asked, "Do you believe that agreement *will resolve all the property issues* in this case?" (Emphasis added.) Alexander replied, "I believe so."

The court then went through the same voir dire with Tatiyanna, consistently characterizing the agreement at issue as "the property agreement" or "the property division" that would resolve "all the property issues in this case." Tatiyanna agreed with the court's characterization of the "agreement *as to the property division* in this case" and with the court's stated intent "to make it [the court's] order *for the property division* in this case," affirming her belief that the parties' "agreement and such an order is a fair and equitable way *to divide the marital estate*." (Emphasis added.)

The court then entered an oral order, making a number of necessary findings related to the divorce and the property division. The court said, "The only agreement that there is, is the agreement that was placed on the record today." It found that "the purpose of the parties' agreement is to resolve all the property issues of this case and . . . the parties' agreement will accomplish that purpose." It noted the parties' understanding

"that they had the right to go to trial had they wished to resolve the property issues in that fashion," but the court would instead "accept the parties' agreement . . . for the property division in this case and make it [the court's] order for the property division in this case."

### 3.      Our conclusion from our review of the record

Our review of the hearing record leads us to conclude that, contrary to the superior court's finding, neither party testified they intended the agreement to resolve *all* issues between them.  The court's voir dire of the parties repeatedly and consistently characterized their agreement as involving "the property issues," and the parties' perfunctory responses never purported to expand the questions' scope.  The court found, following voir dire, that "[t]he parties have entered into an agreement to divide their property and that agreement has been fully put forth on the record."  The agreement on the record can only reasonably be interpreted as involving the division of property and nothing else.

Comments in the record that could be interpreted more expansively include the suggestion of Alexander's attorney that his client "want[ed] this done today"; the later interjection by Alexander's father that it would be best to "get these parties separated and have no responsibilities with one another whatsoever";[8] and the court's final remarks: "And that will close out these two cases . . . ."  But the parties' testimony does not reflect the same broad intent; most importantly, there is nothing in the hearing record to indicate that Tatiyanna, either directly or through her attorney, intended the resolution of the property issues in the divorce to affect her claim for attorney's fees in the domestic violence protective proceedings.  And the court's statement that it intended to "close out these two cases" did not, in fact, end the parties' obligations toward each other; most

---

**8**      Alexander's father, an attorney, had not entered an appearance in the case but was apparently present in his parental capacity.

provisions of the long-term domestic violence restraining order remained in effect for a year from the date of its issuance.

We necessarily reject the superior court's inference from Tatiyanna's silence that she intended to settle her claim for attorney's fees. The inference rests primarily on the court's finding that the parties intended their settlement to "resolve *all* issues in the case," a finding that in turn rests on the court's mistaken recollection of Tatiyanna's testimony. And given the court's very specific focus on the property issues in its colloquy with the parties, it was not unreasonable for Tatiyanna to remain quiet about claims that did not appear to be on the table.[9]

Alexander argues that the superior court implicitly found the domestic violence protective proceeding to be an "exceptional" one exempt from an award of attorney's fees under AS 18.66.100(c)[10] because of the parties' intent to resolve the entire case at the hearing. But the court did not find the domestic violence proceeding to be "exceptional"; it stated that Tatiyanna would be entitled to an award of fees "absent the parties' agreement," and as explained above, the parties' agreement did not encompass the fees claim. Alexander also contends that the court could have found their case to be

---

[9]     We note that one provision of the form long-term domestic violence protective order provides for the respondent's payment of attorney's fees and costs, and it would have been appropriate for the parties or the court to address it during the hearing on the domestic violence petition. But the proceeding did not progress methodically through the order's provisions, and Alexander does not direct us to a specific place in the record where Tatiyanna could have been expected to raise the issue or waive it. *See Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978) (holding that implied waiver requires "direct, unequivocal conduct indicating a purpose to abandon or waive the legal right").

[10]     *See Lee-Magana v. Carpenter*, 375 P.3d 60, 64-65 (Alaska 2016) (concluding that "it would seem to be the exceptional case in which the superior court declines to award attorney's fees to the prevailing petitioner" in a domestic violence proceeding).

an "exceptional" one because Tatiyanna did not need the prospect of a fees award to encourage her to hire counsel in the domestic violence protective proceeding:[11] She filed her petition pro se, then in response to Alexander's filing of the complaint for divorce she hired a lawyer, who also represented her in the domestic violence proceeding. But we reject Alexander's apparent contention that a statutory fee award is intended to encourage legal representation only for the *filing* of a domestic violence petition; having a lawyer is likely to be even more important when the allegations of the petition become the subject of an evidentiary hearing, as they did here.

B.   **The Written Findings Of Fact And Conclusions Of Law Do Not Require A Finding That Tatiyanna Intended To Settle Her Fees Claim.**

Alexander argues that the written findings of fact and conclusions of law, entered five days after the hearing, support a conclusion that Tatiyanna intended the settlement agreement to resolve her claim for attorney's fees. We disagree.

Alexander relies on the court's findings that "[t]he parties have agreed . . . [that] [e]ach party will be responsible for . . . the debts in their name"; that "[n]o other assets or debts remain to be divided"; and that "[e]ach party will bear their own costs and attorney's fees related to the divorce." But the money Tatiyanna owed to her attorney was not a marital debt, and her claim for those fees from Alexander was not a marital asset.[12] The parties had every right to settle their claims for costs and attorney's fees

___

[11]   *See id.* at 64 (recognizing "the strong policy arguments for encouraging legal representation in domestic violence proceedings, as represented petitioners are more likely to succeed in obtaining a protective order and are less likely to suffer further abuse").

[12]   *See Berry v. Berry*, 277 P.3d 771, 780 n.33 (Alaska 2012) (clarifying "that attorney's fees incurred in a divorce proceeding do not constitute part of the marital estate in Alaska").

"related to the divorce," as they did.  But we will not read more into that language than is there.

As highlighted by the modifying language — "costs and attorney's fees *related to the divorce*" (emphasis added) — the findings and conclusions  appear to be carefully limited to property and other divorce issues.  The introductory language is specific:  "The parties reached an agreement on the record *which resolved all issues of property division.*"  (Emphasis added.)  The relevant conclusion of law states:  "The agreement of the parties was freely and knowingly entered and is a fair and equitable *distribution of the marital assets.*"  (Emphasis added.)

Alexander asks us not to "overlook[] that it was counsel for [Tatiyanna] who prepared the Findings of Fact and Conclusions of Law."  We do not overlook that fact, but we conclude that it supports our decision.  The draft findings and conclusions, prepared by Tatiyanna's lawyer, were filed within a day of her motion for attorney's fees. The limiting language of the findings and conclusions supports an intent to distinguish them from the domestic violence protective proceedings in which Tatiyanna was simultaneously pursuing her claim for attorney's fees.

We conclude that the court's written findings of fact and conclusions of law, like the record of the hearing, do not reflect the parties' intent that their property settlement resolve Tatiyanna's claim for attorney's fees in the domestic violence protective proceedings.

## V.    CONCLUSION

We REVERSE the decision denying Tatiyanna's motion for attorney's fees incurred in the domestic violence protective proceedings and REMAND to the superior court for further proceedings consistent with this opinion.